[PHILADELPHIA, FEBRUARY 2d, 1835.]

## ⸢ CRAIG *against* CRAIG.

### IN ERROR.

In an action to recover contribution, brought against a co-obligor in a bond, the defendant agreed to submit to the obligee the decision of the fact of payment to him, of the bond by the plaintiff.

*Held,* that counter declarations of the obligee, whether in conversation or on oath, were admissible to show his want of good faith or of memory.

A receipt purporting to be for a sum equivalent to the defendant's proportion of the debt, given by the obligee, is not evidence of exoneration against a co-obligor in an action to recover contribution.

Statements by a witness at another time, though admissible to contradict are not equally so to confirm him.

This is the general rule.   But consonant declarations may be given in contradiction of evidence, tending to show that the testimony at the bar is a fabrication of recent date, and to show that the same statement was made before its ultimate effect on the question trying, could have been foreseen.

Proof of payment in money is not absolutely indispensable to sustain a count for money paid, laid out and expended.   Per GIBSON, C. J.

Payment by a surety before the maturity of the debt, is not necessarily voluntary.   Per GIBSON, C. J.

An obligor to whom the bond has been delivered by the obligee on a promise of payment, actual or conditional, may on actual payment in pursuance of his promise, maintain an action for contribution against his co-obligor.

THIS was a writ of error to the Common Pleas of Northampton

(Craig *v.* Craig.)

County. The action was *indebitatus assumpsit,* brought by *Charles* against *Thomas Craig,* to recover one half of two bonds, each in the sum of three hundred dollars, in which they were jointly bound to their father, General *Craig:* the whole of which *Charles* alleged that he had paid. The declaration contained counts for money. paid, laid out and expended: for money lent and advanced: and for money had and received. The plea was *non assumpsit.*

·This cause was ·before this court on a former writ of error, [see 3 *Rawle,* 472,] when the judgment of the court below was reversed, and a *venire facias de novo* awarded. The record being remitted, it came on for trial again on the 23d April, 1833.

Two witnesses Dr. *John Boyd* and *Frederick Hyneman*, to whom the dispute between the brothers was referred, deposed that *Thomas Craig* had told them, that if General *Craig* would say he had received the amount of the bonds of *Charles,* he, *Thomas,* was ready and willing to pay his share. They further testified to various declarations made by General *Craig,* in their presence and hearing, relative to payment by *Charles.*

The defendant afterwards offered in evidence, the contents of a deposition of general *Craig, taken on the 13th* February, *1827,* as his declarations, for the purpose of proving mistake or *mala fides* in him, at the time of the supposed declarations, made before Dr. *Boyd* and Mr. *Hyneman.* To the admission of this in evidence, the plaintiff objected: first, because it purported to be a deposition taken under a ·rule of court, and was not filed according to the rule; secondly, because it was taken when the cause was· pending before arbitrators. The court sustained the objection, and rejected the evidence, which form the subject of the first bill of exceptions.

The defendant then offered to prove by *C. Beitel,* the declarations of General *Craig,* made in his presence, purporting that he had not received payment of these bonds from *Charles,* for a similar purpose ·to the admission of which in·evidence the plaintiff objected, for the reasons already stated; and because the alleged declaration was an irregularly taken deposition in the cause, which had been already overruled. The court sustained the objection, and sealed a bill of exceptions.

The defendant then offered in evidence the deposition of General *Craig,* taken on the 17th of January, 1829, to the admission of which the plaintiff objected, because it was taken after the former trial, and on a motion for a new trial; and taken to be read on the argument of that motion; and because the subject matter of the deposition was not evidence. The court rejected the evidence; to which decision the defendant excepted.

The defendant then offered in evidence the deposition of General *Craig,* in connection with the evidence of *Charles Deshler,* as the declarations of General *Craig:* and also offered to prove by *C. Davis* and *C. J. Beitel,* General *Craig's* declarations, for the purpose of

(Craig *v.* Craig.)

showing mistake or *mala fides* in his supposed declarations, before *Boyd* and *Hyneman*, to the admission of which the plaintiff objected, and was sustained by the court.    These formed the subject of the fourth, fifth and sixth exceptions.

The defendant then offered in evidence the deposition of General *Craig*, taken on the 7th July, 1830, in this suit, as between the same parties, and in relation to the same subject-matter.    The court sustained the plaintiff's objection to the admission of this evidence, and sealed a bill of exceptions.

The defendant then offered in evidence, two receipts from General *Craig* to *Thomas Craig*, the first dated 30th August, 1823, for one hundred and fifty dollars, on account of the bond due 1st May, next. The second dated 9th November, 1825, being an acknowledgment that two bonds, one for three hundred, and the other for two hundred dollars, had been previously paid, for the purpose of showing that *Thomas Craig* had been exonerated from liability on these bonds. The plaintiff objected to the admission of these receipts in evidence, and the court sustained his objection.    The receipts were as follows:

Lehigh Gap, August 30, 1823.

Received of *Thomas Craig*, jr. the sum of one hundred and fifty dollars, in full, for his part of a bond due the first of May next.

*T. Craig.*

Allentown, November 9th, 1825.

I hereby acknowledge to have received of *Thomas Craig*, jr. his full proportion of two bonds executed by the said *Thomas Craig*, jr. and *Charles Craig*, and payable to me, one for three hundred dollars, and the other for two hundred dollars; which bonds were by me left in the hands of *Charles Craig*.

*T. Craig.*

The plaintiff then offered in evidence, the declaration by General *Craig*, dated May 12th, 1823, in the Common Pleas of Lehigh County, to obtain a pension under the provisions of the Act of Congress, of 18th March, 1818. Also, his declaration dated 28th January, 1822, to obtain a pension, made in the Common Pleas of Northampton County, which were offered in evidence, for the purpose of showing that in January, 1822, General *Craig* stated that he had the bonds in controversy; and that in May, 1823, he stated that he had sold them in payment of his debts, and to show conformity with the decision made in the presence of *Boyd* and *Hyneman*.    The defendant objected to the admission of these declarations in evidence; and thereupon, the court excluded all of the paper dated in January 1822, except so much thereof as describes the bonds in the possession of *Thomas Craig*: and also excluded all of the paper dated in May, 1823, except so much thereof, as states and shows what disposition the said *Thomas Craig* made of the said bonds.    The court also admitted in evidence the dates of the papers, and the occasion

(Craig *v.* Craig.)

on which the declarations therein contained were made; to which decision the defendant excepted.

The plaintiff then offered to prove by a witness, that on the 15th of December, 1823, when all matters in variance were submitted to the witness and two others, the plaintiff produced the bonds in question, and the defendant objected to their being taken into consideration because they were not then due, and also said that the plaintiff had paid nothing for them. And upon that occasion General *Craig* said in the presence of both parties, ' *Charles* has satisfied me for those bonds. *Tommy*, you know nothing about it.' The arbitrators then handed them back to *Charles*, and said, ' These you keep, when they come due, they will speak for themselves. We cannot take them into consideration now.' And upon that occasion *Charles* exhibited the vouchers at *Thomas's* request, showing how he had satisfied the bonds. To the admission of which in evidence, the defendant objected, because they were not the declarations of General *Craig* made at the time when *Thomas* agreed to refer it to the decision of his father; that *Thomas* dissented, that the acts or declarations of the arbitrators in relation to the bonds were not evidence, nor was evidence of the production of the vouchers competent. The court however overruled the objection, and admitted the evidence, and likewise the evidence of another of the arbitrators last mentioned, and of a similar nature. This formed the subject of the 10th and 11th exceptions.

The defendant then again offered in evidence the three depositions of General *Craig*, before offered, which were objected to by the plaintiff, and rejected by the court. To this decision the defendant excepted.

The defendant's counsel then requested the answer of the court to the following points, in their charge to the jury.

1. Can the plaintiff recover in this action, unless he has proved the payment of money?

2. If the plaintiff voluntarily paid more than his portion of the bonds before they fell due, is he entitled to recover in this action?

3. Did not the surrender of the bonds to *Charles*, without payment and without consideration, *ipso facto*, put an end to all liability of the obligors on these bonds? And can any payment which *Charles* may have made in pursuance of, or in compliance with any promise, undertaking, or understanding, between him and his father, at the time of such surrender, give him any cause of action against *Thomas*, to recover any part of what he so paid?

4. If the jury believe that General *Craig* surrendered these bonds to his son *Charles*, upon the consideration that the said *Charles* had promised to pay the amount of the said bonds to him if he should want it; or in confidence that they would not suffer him to want, the plaintiff cannot recover in this action.

In answer to the first point proposed by the defendant's counsel, the court instructed the jury, that the plaintiff could not recover unless he had proved to their satisfaction, that he had paid to General *Craig* the amount of the bonds in question. It was not necessary, however, that he should do this by positive testimony; he might establish it in the same manner that any other fact may be proved.

Answer to the second point. If the plaintiff being one of the co-obligors, did pay the money to General *Craig* before the bond came due, he is entitled to recover of the defendant his share of the money, after the time mentioned for the payment in the bonds has expired, and not before.

The third and fourth points were answered by the Court in the following manner :

If General *Craig* delivered these bonds to *Charles Craig*, as a gift, without the payment of the money, or a promise or undertaking to pay the same by *Charles Craig;* or if General *Craig* surrendered them to *Charles*, and depended upon his honour to pay, or that *Charles* would not let him suffer, and without any legal obligation on the part of *Charles* to pay the same, then the plaintiff cannot recover, although he subsequently paid the amount to General *Craig.* But if these bonds were delivered over to *Charles Craig*, upon his promise or undertaking to pay the amount to his father, and if he has paid the amount, then after the bonds became due, the plaintiff can maintain this action to recover of the defendant his share ; or if the bonds were delivered to *Charles* upon his conditional promise or agreement to pay upon the happening of a certain event, and that event did happen, and *Charles* paid the money, he can recover.

To which opinion of the court the defendant, by his counsel, excepted, and requested the same to be filed.

The following errors were assigned.

1. That the court erred in rejecting the evidence mentioned in the first bill of exceptions.

2. The same as to the second bill of exceptions.

3. The same as to the third bill of exceptions.

4. The same as to the fourth bill of exceptions.

5. The same as to the fifth bill of exceptions.

6. The same as to the sixth bill of exceptions.

7. The same as to the seventh bill of exceptions.

8. The court erred in rejecting the two receipts mentioned in the eighth bill of exceptions.

9. The court erred in admitting the evidence mentioned in the ninth bill of exceptions.

10. The same as to the tenth bill of exceptions.

(Craig *v.* Craig.)

11. The same as to the eleventh bill of exceptions.

12. The court erred in rejecting the evidence mentioned in the twelfth bill of exceptions.

13. The court did not answer the first point submitted to them by the defendant.

14. The court erred in their answer to the defendant's second point.

15. The court erred in their answer to the defendant's third and fourth points.

The case was argued by *Jones* and *Wharton* for the plaintiff in error; and by *Brooke* and *Porter* for the defendant in error.

The opinion of the court was delivered by

GIBSON, C. J.—The position of General *Craig* in relation to the parties, was a peculiar one. It was submitted to him, rather as a witness than an arbitrator, to say the truth between them; and though his declaration was adopted by the unsuccessful party beforehand so far as to affect him, it was held when the cause was here before to be open to be disproved, just as the award of an arbitrator or the testimony of a witness may be disproved, by evidence of mistake or corruption. Putting him then in the attitude of a witness or an arbitrator, his want of memory or good faith can be evinced in no way more satisfactorily than by evidence of counter declarations whether in conversation or on oath. Proof of self-contradiction, under whatever sanction or circumstances, must necessarily detract from his credibility. It seems to be of little account therefore that his several depositions would be inadmissible independently of the attitude in which he was placed by the appeal to his veracity; or that these were not regularly taken as original proofs in the cause. The voluntary affidavit of a witness may be introduced to discredit him; and though these depositions were not competent evidence of the facts asserted in them, they were competent to show that General *Craig* had given contradictory statements of the same transaction. For the same purpose his sayings and doings before the magistrate or elsewhere, though not inserted in the paper, were also admissible; and this disposes of the first six bills of exceptions to evidence.

His two receipts given to the defendant, stand on different ground. They were offered not as acts which might be inconsistent with his statement to the arbitrators; nor as evidence of payment in fact of which, except against the obligee or his assignee, they would not be competent; but as acts of direct exoneration. Granting them, for the moment, to have the force of an acquittance, would the fact however proved be a defence to the action? The release of one joint obligor discharges the other; and had the plaintiff paid with notice that he was discharged by the complete exoneration of his

(Craig v. Craig.)

co-obligor, he certainly would not be suffered to call for contribution. If however the defendant in whose knowledge the transaction peculiarly lay, suffered him to pay in ignorance of it, he could not say that the payment was merely voluntary; and this might have furnished matter for an inquiry by the jury. But the receipts do not purport to have exonerated the defendant from further payment. The obligor barely acknowledged the receipt of a sum equivalent to the defendant's proportion of the debt; and does such an acknowledgment change the terms and effect of the bonds by which he was bound for the whole? Or can it supply the want of operative words of release? If it cannot, the receipts can be evidence of exoneration *pro tanto*, but as evidence of payment. Actual payment of the defendant's proportion would be an answer to a demand of contribution; but it could not be proved by the acts or admissions of the obligee to affect the plaintiff who claims not by substitution to him, but on his own original right as a joint obligor. Whether the receipts might not be competent to contradict the obligee's assertion of payment by the plaintiff, is a question which was not made below, the evidence having been proposed to the court in a different point of view; but which may be readily answered in the affirmative.

But statements by a witness at another time, though admissible to contradict him, are not equally so to confirm him. They are certainly not receivable before his credibility has been assailed; but it is a vexed question whether they may not be used to rebut evidence of self-contradiction by showing him to have been sometimes consistent. The affirmative is supported by a number of respectable authorities, the principal ones of which are *Lutterel* v. *Reynell*, 1 *Mod.* 282; *Freind's Case*, 4 *State Tr.* 613; *Wright* v. *Deklyne*, *Peters's C. C. Rep.* 203, and *Gilb. Ev.* 135; opposed to which stands the doubt of Mr. Justice Buller in his law of Nisi Prius, 295, as well as the opinion of Lord Redesdale, together with his assertion of a decision to the same affect by Chief Justice Eyre, as stated in a note to 1 *Starkie's Evid.* 187. Mr. *Phillips* speaks doubtingly (vol. 1, p. 230,) but inclines to the affirmative; and Mr. *Roscoe* (p. 96,) seems to incline the other way. Mr. *Starkie* positively asserts the negative as the general rule; yet admits that such confirmatory evidence may possibly be made competent by circumstances. Thus it stands between jarring authorities; but on principle the question would not seem to be susceptible of any great degree of difficulty. Though usually called confirmatory, these consistent statements are universally agreed not to be admissible in chief, but only to rebut other contradictory statements; and if merely corroborative of the testimony in chief, why should they not be received before the credibility of the witness has been impeached? As rebutting, it cannot be pretended that they disprove the fact of contradiction, or that they remove the imputation of inconsistency; for it follows not,

(Craig *v.* Craig.)

because the witness had sometimes told the tale delivered by him at the bar, that he had never told a different one. If it be supposed that they rebut the inference to be drawn from the fact of contradiction by decreasing its force, they still leave the witness more exposed than ever to the charge of vacillation; and how he is confirmed by being left in a predicament so unfavourable to his veracity, it is not easy to comprehend. Adopting then the rule of Mr. *Starkie* with its exception, that consonant declarations may be given in contradiction of evidence tending to show that the testimony at the bar is a fabrication of a recent date; and to show that the same statement was made before its ultimate effect on the question trying could have been foreseen, we come to an inquiry into the time and circumstances of the declarations made by General *Craig* to entitle him to the benefit of the pension laws. These were made in 1822 and 1823—the last on the twelfth day of May in that year. The earliest information we have of a contest between the parties, is given by *William Craig*, who testifies to an inquiry by the defendant, in the October following, into the real state of the transaction, in consequence of an intimation that the plaintiff was about to sue him. At this time, for aught that appears, General *Craig* was in harmony with the parties; and his previous statements while his passions and prejudices were in a state of repose, and especially when he could not have foreseen the existence of the present controversy, or the bearing which his declarations might have on it, are indisputably within the exception to the general rule. These declarations were therefore properly admitted; and for the same reason it would seem that his declarations before the arbitrators in 1823, were admissible, though certainly entitled to less consideration by the jury.

The exceptions to the charge are not sustained. Proof of payment in money is not absolutely indispensable to a count for money expended to the defendant's use; though it must be admitted that the only exception recognised in the books, is the case of payment in negotiable paper. But the direction on this head, was in substantial accordance with the prayer. As to the position taken, that payment before the bonds fell due, would be essentially voluntary, it is proper to remark, that the principle was ruled differently in *Armstrong* v. *Gilchrist*, 2 *Johns. Ca.* 429, where it was held that a guarantee of a note who had compromised and paid it for his own indemnity before it had become due, was entitled to recover. That a surety is to wait till payment is extorted from him, is not pretended; but it is said that payment before maturity is necessarily voluntary, and that eventual liability is not equivalent to a precedent request. There is no authority for that; and it seems not to be defensible on principle. Why may not a surety take measures of precaution against loss from a change in the circumstances of his principal, and accept terms of compromise before the day, which may

, (Craig *v.* Craig.)

not be attainable after it.  He may ultimately have to bear the
burthen of the debt, and may therefore provide for the contingency
by reducing the weight of it.  Nor is he *bound to subject himself*
to the risk of an action by waiting till the creditor has a cause of
action.  He may, in short, consult his own safety and resort to any
measure calculated to assure him of it, which does not involve a wan-
ton sacrifice of the interest of his principal.  If then General *Craig*
delivered these bonds on a promise of payment absolute or condi-
tional, there cannot be a doubt that actual payment in pursuance
of it, would entitle the plaintiff to contribution.  All that can be
said is that it could not have been enforced before the bonds were due.
        Judgment reversed and a *venire de novo* awarded.