# Kershaw *v.* The Merchants' Bank of New York.

The statute of this state, which declares that in actions commenced or sued upon any assigned bond, obligation, bill single, promissory note, and all other writings for the payment of money, or any other thing, the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and sets-off, made, had, or possessed against the same, previous to notice of assignment, embraces a set-off against an inland bill of exchange, which accrued previous to notice of assignment.

If the set-off would have been good against the assignor, under the statute of Mississippi, it is valid against the assignee, if acquired previous to notice of assignment.

The statute of set-off is predicated on equitable principles, and should be liberally construed.

It is well settled, that a levy on sufficient property changes the title and discharges the defendant.

The acceptor of an inland bill became the surety of the payee on a forthcoming bond which was forfeited, and an execution emanating therefrom levied on sufficient property of the surety, the payee of the bill assigned the same, and the assignee brought suit; but the execution was levied before notice of assignment. The defendant filed as a set-off the amount of the levy; the court held, that the levy was *prima facie* satisfaction of the judgment, and entitled the security thereon to his action against the principal, and rendered the amount of the judgment a good set-off against the bill of exchange. If actual satisfaction was not had, owing to a legal discharge of the levy, it should have been shown in avoidance.

Courts of law and courts of equity follow very much the same general doctrine on the subject of set-off.

Where a levy has been made, the law will presume that the officer sold the property. If the officer levy on sufficient property, and waste it, it will still be a satisfaction of the judgment.

It is sufficient in pleading if the party state a *prima facie* case; matter in avoidance must come from the other side.

A plea of set-off to the whole action is bad, when it offers to set off a less amount against a greater.

In an action under the statute against the drawer, acceptor and indorser of a bill of exchange, a set-off, with notice, may be given in evidence under the general issue

Kershaw *v.* The Merchants' Bank of New York.

IN ERROR from the circuit court of the county of Adams.

This action of assumpsit is founded on a bill of exchange for seventeen thousand five hundred dollars, drawn by James H. Claiborne on Thomas Kershaw, in favor of C. Haring. It was made payable at the Commercial Bank of Natchez. It was accepted by Kershaw, and Haring indorsed it to the defendants in error, who sued all the parties in the same action, but discontinued as to Claiborne, who was not found, and abated as to Haring before the trial. The bill was received inclosed in a letter by the cashier of the bank for collection, from the defendants in error, on the 23d of August, 1837, it being payable on the 1st of February, 1838; but there was no proof that Kershaw had any notice of the transfer of the bill until the commencement of the suit, which was on the 25th of April, 1839.

Kershaw pleaded non-assumpsit, and filed an account against Haring for twenty thousand dollars, for so much paid over to Matthew Flournoy, with a notice that it would be claimed as a set-off. He also filed a note given to him by Haring for thirteen hundred dollars, payable on the 1st of February, 1839.

There was also a special plea of set-off which disclosed these facts, to wit: That the marshal of the state held in his hands an execution against C. Haring, in favor of Flournoy, who to relieve himself, it being a *ca. sa.*, surrendered property which was levied on, and on the 6th of October, 1838, executed a forthcoming bond for the delivery of the property on the day of sale, in which Kershaw became his surety. This bond was returned forfeited, on the 5th of November, 1838, and having the force and effect of a judgment, a *fieri facias* issued thereon, on the 27th of December, 1838, against the goods and chattels of both the obligors, Haring and Kershaw, which was levied the 1st of April, 1839, on forty-nine negroes, the property of Kershaw, by which levy the plea averred that Haring was discharged from the judgment of Flournoy, and that he thereby became liable to Kershaw for the amount; which amount, to wit, the sum of 16,041 dollars, with interest, the defendant offered to set off. It was averred in the plea that Haring became so indebted to Kershaw before notice of assignment. To this plea the plaintiff below demurred, and his demurrer was sus-

tained. The court also refused to allow the note of 1300 dollars to be read in evidence as an off-set, and also ruled out the evidence of the facts set out in the special plea, which the defendant offered to prove under the general issue. It was in proof that Haring was insolvent before his death, and that his estate is totally insolvent.

Verdict and judgment against the defendant for the full amount.

The errors assigned are, the judgment of the court in sustaining the demurrer and excluding the set-offs and evidence in relation thereto.

EUSTIS for plaintiff in error.

1. By the statute, How. & Hutch. Dig. 595, drawers and indorsers are to be joined in the same suit, if resident within the state. Acceptors are not named, except in the section concerning executions. It is not an act to be extended to embrace other parties by implication. There is a general demurrer on the record which should be taken back to the mis-joinder, and even without the demurrer this court will notice it. Discontinuance as to the parties not served, (which, however, was not entered until after plea filed by the plaintiff in error,) does not cure the error in the form of action. In consequence of the form of action adopted by the plaintiff in the court below, the defendant was confined by the statute to the plea of *non assumpsit*. To this plea he annexed an account for money paid, and endeavored to get in his defence of set-off. But the court decided that the plea was insufficient to cover the defence. In other words, the court considered that the statute embraced acceptors, and is law for plaintiffs, but is not law for defendants. But we wish this court to decide upon the sufficiency of the set-off, which appears in the special plea, and in the bill of exceptions taken to the opinion of the court ruling out the evidence offered under the general issue and account therewith filed.

And here the question is presented, whether bills of exchange are within the statute of set-off. They are within the words, "other writing for the payment of money." The act makes assignable certain instruments which were not so ; authorizing them to be sued on as in cases of inland bills of exchange.

How. & Hutch. 373, sec. 12. But the same breath which likens their negotiability to that of a domestic bill, makes them subject to set-off. What reason, then, for denying the incident of set-off to the domestic or inland bill. The case at bar is founded upon a domestic bill. If foreign bills of exchange are not within the act, the reason may be found in the fact that until a comparatively recent decision of the supreme court of the United States to the contrary, the term foreign bill was not generally supposed to apply to a bill of exchange drawn and accepted within the United States. Those going out of the United States, or drawn out of the United States, were alone understood to be foreign bills ; and such bills of exchange may have been intentionally continued unimpaired in their negotiability out of comity.

In support of the set-off we refer to the following cases. 2 Lord Raymond, 1072; 1 Salk. 323; 2 Tidd, 937 ; Armstrong *v.* Garrow, 6 Cow. 465; Witherby *v.* Mann, 11 J. R. 517; Taylor *v.* Dundas, 1 Wash. 93 ; Ladd *v.* Blunt, 4 Mass. 402; Binncy *v.* Scales, 2 Wend. 481; Smith *v.* Rosencrantz, 6 John. 97; 1 Mon. R. 246 ; 9 Mass. 138 ; 17 Mass. 153 ; Randall *v.* Rich, 11 Mass. 498; Wilcox *v.* McNutt, 3 Howard, 423.

These cases, it is believed, show that the levy *"ad libitum"* was a satisfaction of the judgment, and that immediately thereupon an action of assumpsit would have lain, for money paid, by the surety against the principal.

In Randall *v.* Rich, chief justice Parker says, "The satisfaction of the execution ought to be considered as a payment in money, and although land is taken, it is taken at money's worth, and the debt, which might have been exacted in money at all events, has been discharged."

If the levy would support a count for money paid, it is equally available as a set-off. But the whole case is disclosed in the bill of exceptions, showing not a mere levy, but that the whole debt had fallen upon the plaintiff in error, and that he had conveyed for its payment property of more than twice its value. His liability was inevitably fixed by the levy, which took place in point of time prior to the commencement of this suit, which, as is shown by the record, was the first intimation to him of the assignment of the bill of exchange.

In the absence of notice, the case is to be viewed precisely as if the suit had been instituted by Cornelius Haring against Thomas Kershaw. Would the court allow Haring himself to recover the amount of the bill? The expense and injustice which frequently arise from compelling a party who is clearly entitled to redress, to seek it in another form, at the expense of infinite delay and vexation, render it difficult to say whether the preservation of the exact boundaries between the tribunals of the common law and of equity are wisely preserved at such cost. What is to be said when there is no relief in equity from the total insolvency of the party? Can it be said here is an innocent third party concerned? There can be no such party under our statute. No cautious person takes a bill of exchange any more than a promissory note within this state without apprising the parties thereto and inquiring for set-off and objections. It is to be presumed that Kershaw became the bail of Haring because he was indebted to him, relying upon the statute that that debt had not been nor could be assigned to his prejudice. To what principle of law is it, then, that the court feel bound to adhere, to the destruction of one who as it appears by the record, was led into this difficulty by humane feelings; who came to the relief of his friend to save him from actual imprisonment. Is it that nothing but an actual payment of money can be given in evidence under an account for money paid? This rule has been repeatedly departed from. Or is it for the technical rule entertained by the court below, that set-offs can only be given in evidence under a plea of payment. It is a violation of the act under which the plaintiff elected to bring his action, to plead any other plea than *non assumpsit.*

McDanold for defendant in error.

Mr. Chief Justice Sharkey stated the case and delivered the opinion of the court.

The important question in this case, and to which our attention has been called by counsel, is as to the sufficiency or validity of the set-off disclosed by the special plea. In the determination of this question, the respective rights of the parties to the action are first to be considered; for the plea to be available must show the

propriety of the set-off, as well against the plaintiffs below as against Haring.

The statute of set-off provides that, "if two or more, dealing together, be indebted to each other upon bonds, bills, bargains, promises, accounts or the like," the defendant may plead payment and give such indebtedness of the plaintiff in evidence as a set-off. H. & H. Dig. 615.

In connexion with this it is necessary to consider another provision, which is in these words: "All bonds, obligations, bills single, promissory notes, and all other writings for the payment of money, or any other thing, shall and may be assigned by indorsement, whether the same be made payable to the order or assigns of the obligee or payee, or not; and the assignee or indorsee shall and may sue in his own name, and maintain any action which the obligee or payee might or could have sued or maintained thereon previous to assignment; and in all actions commenced or sued upon, any such assigned bond, obligation, bill single, promissory note or other writing as aforesaid, the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and sets-off, made, had or possessed against the same, previous to notice of assignment, any law, custom or usage, in anywise to the contrary notwithstanding, in the same manner as if the same had been sued and prosecuted by the obligee or payee therein." H. & H. 373.

It is insisted by counsel that domestic or inland bills are within the last section of the statute referred to, and that the acceptor may avail himself of a set-off, as well to such a bill as he could to a note, under the statute. We do not doubt it. The words "all other writings for the payment of money" must include domestic bills, they being writings for the payment of money. There is, moreover, clear evidence that the intention of this statute was to make a radical change in commercial usage in relation to all negotiable paper. This law is anticommercial in its character, and the reason of the law applies as well to bills as to notes. If these instruments were subject to different rules, bills would take the place of notes in all cases, and the object of the law would be defeated. The two statutes must be construed together; one establishes a general law of set-off, applicable to all debts; the other, after making all paper

for the payment of money assignable, secures the right of set-off up to the time the maker has notice of assignment. Domestic bills are not mentioned in the latter section, and yet they are clearly within the general provision, "all other writings for the payment of money." Bills of exchange and promissory notes are so much alike, and perform so nearly the same office in commercial transactions, that it is impossible to conceive any reason which could justify a belief that any distinction was intended. As between the payee of a bill and the acceptor, it is precisely like a note in all respects.

An inland bill not payable to bearer or to order, is no doubt a negotiable instrument, but it is only so by the operation of this statute, and if it derives a new character from the statute, must it not take all the incidents or consequences? As between the acceptor and holder of a bill, the former is undoubtedly entitled to his set-off against the latter, under the statute of set-off, for any debt which the holder may owe to the acceptor. It is so even in England, where nothing is allowed to embarrass the negotiable character of bills. Babington on Set-off, 17. But may a set-off be pleaded, which accrued at any time before notice of assignment, is the question? The last section referred to does not give any right of set-off which the defendant would not have had by the first section. It only enlarges the rights of the defendant, by allowing him to plead any set-off acquired before notice of assignment. By this statute the maker of a note is protected in any payment made to the payee, or any liability of the payee acquired in good faith, at any time before notice of the assignment of the note. The justice and reason of the law apply with equal force as between the acceptor and payee of a bill, and we must hold them to be within its provisions. We cannot make an exception in the law, which is neither sanctioned by its spirit or its letter.

This view of the subject entitles Kershaw to every set-off as against the defendants in error, which could have been set up against Haring, before notice of assignment, which was on the 25th of April, 1839. Up to that time the rights of the parties must be considered precisely as though Haring had been plaintiff in the action. If the off-set pleaded would have been good as

against Haring, it must also be good as against the defendants in error.

Our statutes of set-off have never, that I am aware of, received a judicial interpretation, as to what description of debts they extend. They are predicated on equitable principles, and entitled to be liberally construed. To come within the statute, the subject of set-off must be a present indebtedness upon contract, express or implied, susceptible of ascertainment in amount. It is held to be a general rule, that a plea of set-off should disclose such a state of facts as would entitle the party pleading it, to sustain his action if he were plaintiff. Barbour on Set-Off, 170. Did the levy on Kershaw's property, for Haring's debt, bring him within these principles? It is a principle, about which there seems to be no diversity of opinion, that a levy on a sufficient amount of property is a satisfaction of the execution. By the levy the property is changed, and the defendant is discharged, whether the sheriff wastes the property or not. No new execution can issue after such levy, and if it should, it will be quashed for irregularity. Many of the authorities go so far as to say that the judgment is extinguished by the levy. 4 Cowen, 417, *ex parte* Lawrence; 7 do. 13, 310; 4 Mass. Rep. 402; 12 Johns. R. 207. This doctrine was fully recognized by this court in the case of McGehe *v.* Handley, 5 Howard, 625. To take a defendant's property, is as much a satisfaction as to take his money, and whilst the levy continues, the plaintiffs' recourse against the defendant is at an end. Thus in Deke's case, cited 2 Lord Raymond, 1072, it was admitted that a levy would be a good plea for the defendant whose property was taken, in a second suit, although it was held not to be a good plea for the co-obligor sued in a different action, because the goods were not sold. We apprehend the decision in that case would not apply to a joint judgment, as a levy in such case on the property of one satisfies the entire judgment. So in Croke Eliz. 237, a levy was held to be a good plea to a *scire facias* on the original judgment. If the levy should be legally removed, then of course the parties are restored to their original rights and liabilities.

Then, on the 1st of April, 1839, the judgment against Haring and his surety Kershaw, was *prima facie* satisfied by a levy on

the property of the latter.    At that time Kershaw's right of action accrued as much as if he had paid the money, there being no difference between a payment in property and a payment in money. Some of the authorities cited by counsel show that if the land of a surety be extended, or if he pay in property, it is equivalent to a payment in money.    This doctrine has been carried still farther, it having been held that if a surety discharged his principal by giving his individual note for the original debt, he is immediately entitled to his action against the principal, although he has not paid the substituted note.    4 Pickering, 444; 6 Greenleaf, 79; 5 Rawle, 91; 2 B. Monroe's Reports, 348.    Now suppose Kershaw had given his individual note to Flournoy in full satisfaction of the amount of his execution, then within the very letter of these authorities, he would have been entitled immediately to his recourse against Haring, on the ground that he had satisfied Haring's liability.    The principle is the same when the satisfaction is made with property, either sold to Flournoy, or levied on by him.    In such case an immediate right springs up, subject however to be defeated, as we shall presently explain.

Courts of law and courts of equity follow very much the same general doctrine on the subject of set-off, except that there are mere equities which cannot be enforced at law.    The only case which we have been able to find resembling the present, is the case of Feazle *v.* Dillard, 5 Leigh, 30.    Feazle gave his bond to Dillard, and, before he had notice of the assignment of the bond, he became Dillard's surety in another bond *to a third* person. The first bond was assigned, and Dillard became insolvent.    Suits were brought against Feazle on both bonds, and he filed his bill to enjoin proceedings on the assigned bond, and claimed to be allowed the amount of the bond which he had assigned as surety as an offset, on the ground that he had signed as surety before notice of assignment, with **a** view to his own liability to his principal, and on the ground of the principal's insolvency.    The court distinctly recognized and admitted his right to the set-off, but held that he had waived it by acts subsequent to the assignment.    This case, it is true, was in equity; but there was no levy on Feazle's property, and not even a judgment against him when he filed the bill.    Does not the levy and consequent satisfaction in this case,

before notice of assignment, so settle and determine the rights of the parties, as to make an offset cognizable at law ?   We think that such is the necessary result of the principles before stated.

But admitting that the matter pleaded was good as a set-off, still it was only *prima facie* so.   Haring may have paid the debt before the day of sale; the property may have been destroyed by unavoidable accident, or the levy removed by other legal means. In any such case, the parties would have been restored to their original condition.   But if any thing of this kind occurred, it was incumbent on the plaintiff to show it.   A subsequent discharge of the levy would come properly from the plaintiff as matter in avoidance.   Such discharge would have constituted the proper subject of a replication in avoidance of the *prima facie* case made out by the plea.   The plaintiff, however, demurred, and thus admitted the plea.

If this plea had averred that the property levied on was sold, then no one could question the defendant's right to the offset, because a sale would have amounted to an unqualified satisfaction for the amount raised.   But we do not think such averment necessary, for two reasons:

1st. The law does not require a party to aver what it presumes from a given state of facts, and it will presume that the marshal sold the property, because it was his duty to do so, that being the very object of the levy.

2d. The law does not require a party to aver any fact which is not essentially necessary to his right.   A sale was not indispensible to an absolute satisfaction, for if the officer wasted the property, it is the same thing as to the defendant.   It is sufficient in pleading to state a *prima facie* case; rebutting matter must come from the other side.

This plea, however, was defective in one particular.   It professes to answer the whole cause of action, and to set-off the entire amount due the plaintiff, when, in truth, the amount claimed by defendant is considerably less than the amount claimed in the declaration.   In other words, by plea to the whole action, the defendant wishes to set-off a less amount against a greater.   For this reason it was demurrable.   Barbour on Set-Off, 169; Bavington on Set-Off, 80–1.

But the sufficiency of the set-off is a question which also arises under the general issue with notice of set-off, and, it being presented in two forms, it was immaterial under which we should consider it. The action was against the drawer, the payee and acceptor, under the statute, and non-assumpsit was a proper plea. The defendant filed with the general issue an account for twenty thousand dollars and a note for thirteen hundred dollars, and it appears by the bill of exceptions that the defendant's counsel, when the demurrer was sustained to the plea, offered proof of the same facts which he had pleaded specially under the general issue. It was competent to make such proof, and if the facts had been proved as they were pleaded, then it would have been competent for the plaintiff to have introduced rebutting proof to show that the levy was discharged, and the court erred in ruling out the defendant's evidence.

We can see no reason whatever for ruling out Haring's note. That was given to Kershaw long before the notice of transfer, and of course constituted a valid set-off. This error would of itself be sufficient to reverse the judgment.

Judgment reversed and new trial granted.