# W. C. CROOKS v. W. M. BUNN.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 1 OF PHILADELPHIA COUNTY.

Argued March 31, 1890—Decided October 6, 1890.

Self-serving and consonant declarations of a party to an action, whether verbal or by letter, and though made ante litem motam, are inadmissible, unless when a part of the res gestæ, or offered to rebut evidence of a want of credibility or of a recent fabrication: Packer v. Gonsalus, 1 S. & R. 526; Henderson v. Jones, 10 S. & R. 322; Craig v. Craig, 5 R. 91; McKee v. Jones, 6 Pa. 425, distinguished.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 87 January Term 1890, Sup. Ct.; court below, No. 105 March Term 1886, C. P. No. 1.

On March 27, 1886, William C. Crooks brought case for libel against William M. Bunn. Issue.

At the trial on December 31, 1886, it was made to appear that the libelous matter complained of was the publication of certain defamatory articles in the Sunday Transcript, of which it was alleged that the defendant was editor and proprietor. The articles appeared in the issues of September 28, 1885, and March 31, 1886. The libelous character of the articles was not controverted, nor that they were of and concerning the plaintiff; but the defendant set up that in June, 1884, he had leased the Sunday Transcript to Thomas M. Jackson, the former managing editor, and that thereupon he had assumed the duties of governor of Idaho, to which office he had been appointed, and had no further connection with the paper until sometime in June, 1886.

Thomas D. Lindsey, called for the defendant, testified that he was the city editor of the Sunday Transcript, and that immediately prior to the time the defendant went west, in June, 1884, the witness was called to the office by Mr. Bunn, into the presence of Mr. Jackson: Q. What directions did you receive? Objected to.

Statement of Facts.

By the court: I am inclined to let it go to the jury for what it is worth; exception.[2]

A. I was officially informed by Mr. Bunn that the control of the Transcript had passed from his hands into that of Mr. Jackson, and Mr. Jackson said: "I am now your boss, the editor and proprietor of this establishment; of course, you look to me in the hereafter;" which I did from that time on.

Harper F. Smith, called for defendant, testified that he was the business manager of the Sunday Transcript, and referred to a conversation had in the office with the defendant and Mr. Jackson, in the latter part of May, 1884: Q. What was the conversation? Objected to.

By the court: Objection overruled; exception.[3]

The witness testified, also, to rentals paid by Mr. Jackson to the defendant: Q. What is the first entry of June 1, 1884? Objected to.

By the court: Objection overruled; exception.[4]

A. June 1, 1884, to one year's rental, $7,500; by moneys paid on William M. Bunn's account, from June 1, 1884, to January 1, 1885, $2,946.17.

The defendant offered in evidence a letter signed by himself, directed to Mr. Lindsey, one of the foregoing witnesses, and dated, "Territory of Idaho, Executive Department, December 26, 1884," as follows:

"My Dear Lindsey: Your letter was received. I am very glad Jackson is happy and doing so well with the Transcript. As you say, he ought to make at least three or four thousand dollars during his two years lease, and if he does I am in hopes he will feel like and be able to form a company that will buy the plant of me. I do not want to go back to Sunday journalism unless I am compelled to. I shall resign during the summer."

Objected to.

By the court: This letter, it strikes me, does not rise any higher than the testimony given by Mr. Lindsey, who says he was present at the transfer. I will rule on it, if you desire.

Mr. Warwick: I would like to have that letter go in evidence, and we ask your Honor for a ruling.

By the court: Admitted; exception.[1]

At the close of the testimony, BREGY, J., charged the jury,

who returned a verdict in favor of the defendant. A rule for a new trial having been discharged, judgment was entered, when the plaintiff took this appeal, assigning for error :

1–4. The admission of defendant's offers.[1 to 4]

*Mr. George H. Earle, Jr.* (with him *Mr. Richard P. White*), for the appellant.

Counsel cited: Duvall v. Darby, 38 Pa. 56 ; United States v. Mertz, 2 W. 407 ; Cummings v. Gann, 52 Pa. 488 ; McGregor v. Sibley, 69 Pa. 388 ; Wiley v. Christ, 4 W. 200 ; Wolle v. Brown, 4 Wh. 367 ; Clever v. Hilberry, 116 Pa. 438.

*Mr. Charles F. Warwick* (with him *Mr. James H. Shakespeare*), for the appellee.

Counsel cited: Packer v. Gonsalus, 1 S. & R. 526 ; Henderson v. Jones, 10 S. & R. 322 ; Craig v. Craig, 5 R. 91 ; McKee v. Jones, 6 Pa. 429.

OPINION, MR. JUSTICE GREEN :

The letter of December 26, 1884, was a private letter, written by the defendant to his friend, Mr. Lindsey. The latter had long been, and was at the time Mr. Bunn was appointed governor of Idaho, city editor of the Transcript, and continued as such thereafter. The letter was written in December, 1884. The defendant claims that he made a lease of the Transcript property to Jackson in June, 1884, and did not resume his connection with the paper till about June 1, 1886, or very shortly before. The contents of the letter prove that it was a mere friendly letter, in which the fact of Jackson's connection with the Transcript, and his success in managing it, are mentioned, with an expression of the writer's satisfaction, and of the hope that Jackson might be more able to buy the plant of him. The letter was in no sense any part of the transaction by which the transfer of the Transcript was made. It had nothing whatever to do with any of the actual facts of the case. It was of no more significance than would have been a conversation between Bunn and Lindsey, at the date of the letter, in which the same words were uttered verbally that were written in the letter. How can it be that such a declaration, made by the defendant to a personal friend, in the absence of

the plaintiff, in a casual letter, being no part of and having no possible connection with the actual transaction of the transfer of the newspaper in question, be made legal evidence in favor of the declarant and against the plaintiff, to support an allegation that such a transfer had been made? If it was not evidence in support of such an allegation, it was not evidence at all, being totally irrelevant for any other purpose.

It was, then, simply Mr. Bunn's assertion to Mr. Lindsey that he had leased the Transcript to Mr. Jackson at some time anterior to the letter. As a matter of course, it was not original or primary evidence; nor, was it secondary evidence, which may be given when primary evidence is lost or cannot be had. But a single reason is, or can be, offered for its admissibility, and that is, that it is competent to show that the defendant, at another time and place, made a statement of the transaction consistent with his present testimony. But that is no reason of itself alone, else a party could constantly make testimony for himself, to be subsequently used in the trial of a cause. It is said, however, that such a declaration can be given to disprove a contrary allegation of recent fabrication. But what can we know respecting such an allegation? Where does it appear in this case? What is there on the record to show us that such a charge has been made against the defendant? Nothing. Where a person has testified in one way on the trial, and proof has been given that at another time he gave a different version of the same subject matter, that proof, of course, appearing on the record, it is sometimes, and in some circumstances, competent to show that at some other time he has made statements of the same matter consistent with his present testimony. Thus in Packer v. Gonsalus, 1 S. & R. 526, Chief Justice Tilghman thus states the rule: "Where the credit of a witness is impeached by evidence that he said something inconsistent with what he has sworn at another time, this may be rebutted by proof of other declarations by him in conformity with what he has sworn; because, both being without oath, one is as good as the other, and the jury will judge of his credit on the whole."

Justice Duncan, in Henderson v. Jones, 10 S. & R. 322, says: "There is only one point in this cause. Where a witness is contradicted, and evidence given to impeach his character,

can evidence be given of what he swore on a former trial, to show his consistency and corroborate him?" The opinion proceeds to show that such evidence can be given. But these cases are of no service in the present contention, for the simple reason that there are no facts on the record to give them application. There is no proof that Mr. Bunn ever admitted to any one that, in point of fact, he was the owner, editor or publisher of the Transcript, at the time the libelous articles were published. There is certainly no proof that he ever so testified in any other case. What then is to be corroborated? Simply his own present testimony. But that will not do. He testified fully in regard to the whole subject of the ownership of the paper. He gave no inconsistent statements in regard to that matter, and no statements inconsistent with any other statements made by him at any other time, in or out of court, and hence it is that the peculiar circumstances which permit the introduction of this very exceptional kind of testimony are not present.

What is said in Craig v. Craig, 5 R. 91, is in no respect different from the ruling in the preceding cases. GIBSON, C. J., said in that case: " But statements by a witness at another time, though admissible to contradict him, are not equally so to confirm him. They are certainly not receivable before his credibility has been assailed; but it is a vexed question whether they may not be used to rebut evidence of self-contradiction, by showing him to have been sometimes consistent." Here, again, it will be seen that the limitation of the exception is to the purpose of rebutting evidence of self-contradiction. But there is no evidence of self-contradiction on the part of Mr. Bunn, and therefore there is nothing to be rebutted. It is argued, however, that the quotation from Starkie, by Chief Justice GIBSON, covers this case. It is in these words: " Adopting, then, the rule of Mr. Starkie with its exception, that consonant declarations may be given in contradiction of evidence tending to show that the testimony at the bar is a fabrication of a recent date, and to show that the same statement was made before its ultimate effect on the question trying could have been foreseen," etc., etc. The difficulty in the application of the exception, as thus stated, is the absence of the evidence tending to show that the present testimony is a fabri-

Opinion of the Court.

cation of recent date. Where is it? If Mr. Bunn had previously made a statement of the facts in hostility with his present testimony, it might well be said the fact of such discrepancy tends to show that his testimony now is a fabrication. But there is no such testimony, and we are not referred to any other testimony having such a tendency. Without such testimony, there is nothing to rebut or contradict.

It is not necessary to review the numerous cases in which we have held that offers of such testimony cannot be sustained. It is inadmissible in the present case upon very plain principles, and does not come within the operation of any of the cases cited in its support. The case of McKee v. Jones, 6 Pa. 425, illustrates the subject quite clearly thus : "Statements by a witness at another time, though admissible to contradict, are not equally so to confirm him. This is the general rule. But consonant declarations may be given in contradiction of evidence tending to show that the testimony at bar is a fabrication of recent date, and to show that the same statement was made before its ultimate effect on the question trying could have been foreseen. . . . . . Here the witness resided in Kentucky. He was not examined in open court. In his second deposition he denied the truth of all he had stated in his first deposition. The declarations proposed to be proved were made prior to either deposition, and were in accordance with the evidence given on the first commission. It would seem that the case was within the rule in Craig v. Craig, 5 R. 91." To bring the present case within the peculiar circumstances which must exist in order to justify the admission of the letter in question, it would have to appear that Mr. Bunn had at some other time either testified or spoken in contradiction of his present testimony, and then, in order to corroborate his present testimony, his declarations on a still previous occasion might be admitted. There are no such facts in the case, and certainly neither he nor his counsel would admit that there were. We are therefore of opinion that the letter of December 26, 1884, was improperly admitted, and the first assignment of error is sustained.

The other assignments are without merit. The conversation testified to by Mr. Lindsey was a part of the res gestæ. It was proof of the official notification by Mr. Bunn to him, Lindsey, the city editor, of the change in the management and control

of the paper. Bunn and Jackson were both present; and the witness proceeded to testify that from that time on Jackson was in sole and absolute charge of the paper. The same remarks are true of the conversation offered and admitted in the testimony of Harper F. Smith, who was the business manager of the paper. Such communications were entirely proper, and were altogether consistent with an actual, bona fide transfer of the paper. The book entries proved by the testimony of the same witness were of the same description. They were evidence of the genuine character of the transfer.

Judgment reversed, and a new venire awarded.