## Commonwealth *v.* Goetz, Appellant.

Argued October 4, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*S. Y. Rossiter,* with him *Thomas E. Doyle,* for appellant.

*Mortimer E. Graham,* District Attorney, with him *Burton R. Laub,* Assistant District Attorney, for appellee.

OPINION BY KELLER, P. J., November 10, 1937:

On September 18, 1936, shortly before eleven o'clock at night, John Reinhold, a druggist in the City of Erie, closed his store, got his car—a small delivery truck—, and started to drive to his home. When he had gone about a mile he stopped for a traffic light, and two men, armed with revolvers, held him up, took possession of his car, drove him into the country, robbed him of his money and of a diamond ring and then drove him back to the city, where, about midnight, they released him. When Reinhold arrived home, about half an hour later, he immediately called the police and described the two robbers. The following afternoon the police searched certain premises at 814 Parade Street, where Oscar Goetz, one of the men suspected by them, in consequence of Reinhold's description, was accustomed to visit, but found nothing connected with the crime. They took back with them, however, the woman who occupied the apartment, and placed her in a cell in jail. The following morning the police again visited 814 Parade Street, taking with them the woman occupant. They found there, sleeping in one bed, Oscar Goetz and John Calabrese, two men who fitted generally with the descriptions of the robbers given by Reinhold, and two revolvers which were not there when they searched the premises the afternoon before. These men were arrested and taken to the police station, where, the same morning, they were identified by Reinhold as the robbers, out of a line of nine men. They were jointly indicted, but on demand of Calabrese they were tried separately, and each was convicted. At their respective trials they denied their guilt, denied being together on the night of September 18, 1936, and offered separate alibis as to their whereabouts that night. Shortly after

they were sentenced and appeals had been taken to this Court, certain circumstances were brought to the attention of Calabrese's attorney and the district attorney, which caused the latter some concern as to whether Reinhold had not been mistaken in his identification of Calabrese and had, perhaps, confused him with another associate of Goetz who greatly resembled Calabrese. With a commendable appreciation of his duties as an officer of justice, the district attorney joined with counsel for Calabrese in asking this Court to return the record to the court below for further investigation into these matters, in order that a new trial might be granted Calabrese if the court was of the opinion that the interests of justice required it. Accordingly the record in the Calabrese case was returned to the court below where it is still pending. The present appeal is by Goetz from the judgment of sentence following his conviction. He presents three grounds for reversal, which we will consider in order.

(1) He contends that as the record in the Calabrese case was returned to the court below to allow it to consider the evidence discovered and produced since the discharge of the rule for a new trial, tending to support Calabrese's alibi and refute his identification by Reinhold as one of the robbers, which may result in a reinstatement of the rule and the grant of a new trial, the same course should be followed with Goetz, and a new trial be granted him if one is awarded to Calabrese. We would be impressed with this argument if Goetz and Calabrese had testified to being together on the night of the robbery, but at a different place—that is, had sworn to a joint alibi instead of separate alibis,— for in that event, if Reinhold was mistaken in his identification of one of them it would follow, if they were together that night, that he was mistaken as to both. But this would not follow if they were not together when the robbery occurred. In that case, Reinhold's mistaken identification of Calabrese—if the court

below, on further consideration of the matter, should come to the conclusion that he was mistaken—would have no corresponding effect on the identification of Goetz, which, at the trial, was somewhat stronger than that of Calabrese. Goetz was the robber whom Reinhold identified as first accosting him and taking possession of the driver's seat in the car, and, at once, he recognized Goetz's face, even though he did not know his name, as he had seen him in his store several times. Furthermore, there were circumstances tending to weaken the identification of Calabrese which were not present with respect to Goetz. The contention is without merit.

(2) He contends that it was error to permit the revolvers found in the apartment at 814 Parade Street on Sunday morning, September 20, to be received in evidence on the trial. When the police visited this apartment on Sunday morning, they found two revolvers, one under the dresser, or bureau, near the bed, in the room in which Goetz and Calabrese were sleeping and the other in a bag hanging on the wall, "as you come in off the dining room." The police had searched these rooms the previous afternoon, when looking for the diamond ring, and testified that at that time there was no revolver under the dresser or in the bag hanging on the wall. They had carefully examined both. The woman, who occupied the apartment, was taken to jail by the police on their leaving the place on Saturday afternoon and stayed in a cell there until she was taken back on Sunday morning and Goetz and Calabrese were found sleeping there in one bed. The men who robbed Reinhold were armed with revolvers. It was too dark for him to recognize any distinguishing marks on them, but the finding of two revolvers in these rooms, after their occupancy by Goetz and Calabrese, which were not there the day before, and which could not have been put there by the tenant, who was in jail during the intervening period, was, in the circum-

stances, relevant evidence, and the revolvers were properly admitted in evidence even though Reinhold was not able to identify them as the revolvers used by the robbers. See *Com. v. Karamarkovic,* 218 Pa. 405, 408, 67 A. 650; *Com. v. Ross,* 266 Pa. 580, 585, 110 A. 327; *Com. v. Ronello,* 242 Pa. 381, 89 A. 553.

(3) Appellant complains that it was error for the court below to permit Sergeant Scalise to testify as to the description of the robbers given him by Reinhold when he called up the police and notified them of the robbery, within half an hour after he was released, to wit, two young men, between twenty-one and twenty-five years old, one short, and the other taller; the short one, chunky and having bushy hair, and the tall one, slim with thin light hair. As before stated these descriptions were generally applicable to Goetz and Calabrese, respectively.

On the trial of Goetz, Reinhold identified him as one of the robbers, picking him out from his place beside his counsel. He also identified Calabrese, picking him out from his seat in the rear of the court room. Goetz's counsel then entered upon a lengthy cross-examination of Reinhold as to the color of the clothes the robbers wore, the color of their shirts, the color of their neckties, etc., in an endeavor to impeach or discredit the identification. Reinhold explained that it was dark of Reinhold as to the color of the clothes the robbers clothes, shirts or neckties, that his attention was directed to their faces, which he saw as they were passing street lights and which he recognized as those of persons he had seen before, although he did not know their names. Counsel for defendant then proceeded to cross-examine Reinhold fully as to his identification of the robbers on Sunday morning after Goetz and Calabrese had been arrested and taken to the station house and Reinhold had been summoned. The prisoners were lined up with seven other men and Reinhold was brought in to identify the robbers. Their position was

then altered, and Reinhold picked out Goetz and Calabrese as the robbers. He was asked if he had identified them the first time and said he had. When asked why he had not announced his identification at once he said he was told by the authorities not to make any statement until he had looked them over a second time. The cross-examination which took up ten pages of the record was directed to an impeachment or discrediting of the witness' identification of the robbers.

Sergeant Scalise was then called by the Commonwealth and testified to the description of the robbers given by Reinhold immediately following his complaint to the police, as recited above.

We are not satisfied that the declaration was not admissible as part of the res gestae. The testimony of Reinhold shows that at the time he was still laboring under the excitement caused by the experience he had just gone through—his life had been threatened and he had been in serious danger. "Declarations made from fifteen minutes to thirty minutes—and in some cases even longer—after the event, were held admissible as part of the res gestae in *Eby v. Travelers Ins. Co.*, 258 Pa. 525, 530-534, 102 A. 209; *Smith v. Stoner*, 243 Pa. 57, 63, 89 A. 795; *Rodgers v. Woodcock Valley Tel. Co.*, 92 Pa. Superior Ct. 445; *Com. v. Stallone*, 281 Pa. 41, 126 A. 56; *Cattison v. Cattison*, 22 Pa. 275; *Howe v. Howe*, 16 Pa. Superior Ct. 193, 197; *Tomczak v. Susquehanna Coal Co.*, supra, [250 Pa. 325, 95 A. 465] pp. 327, 328. The test is whether they were made under such circumstances as would raise the reasonable presumption that they were the spontaneous utterances of thoughts created by, or springing out of, the transaction itself, and so soon thereafter as to exclude the presumption that they were the result of premeditation and design: *Riley v. Carnegie Steel Co.*, 276 Pa. 82, 84, 119 A. 832; *McMahon v. E. G. Budd Mfg. Co.*, 108 Pa. Superior Ct. 235, 239, 164 A. 850"; *Broad*

*Street Trust Co. v. Heyl Bros.,* 128 Pa. Superior Ct. 65, 193 A. 397. But, in any event, following the efforts of defendant's counsel on the lengthy cross-examination[1] of Reinhold to impeach or discredit his identification of the robbers, the declaration made by him to the police before the arrest of Goetz and Calabrese, describing the appearance of the robbers, was admissible for the purpose of showing that his identifying description was not a fabrication of recent date but "was made before its ultimate effect on the question trying could have been foreseen" *(Craig v. Craig,* 5 Rawle 91, 98). It is distinguishable on the facts from *Com. v. Derembeis,* 120 Pa. Superior Ct. 158, 170, 182 A. 85.

Professor Wigmore in his work on Evidence (2d Edition) has discussed the subject at length (sections 1126 to 1131). The following, on the subject of identification, (Section 1130), while not exactly in point, has some bearing on the question: "(1) Ordinarily, when a witness is asked to *identify* the assailant, or thief, or other person who is the subject of his testimony, the witness' act of pointing out then and there the accused (or other person) is of little testimonial force. After all that has intervened, it would seldom happen that the witness would not have come to believe in the person's identity. The failure to recognize would tell for the accused; but the affirmative recognition might mean little against him. The situation is practically the same as when Recent Contrivance is alleged. To corroborate the witness, therefore, it is

---

[1] See *Com. v. Brown,* 23 Pa. Superior Ct. 470, 504, "It is plain that they sought, by their testimony and *by their cross-examination of the Commonwealth's witnesses,* to show that the latter had a motive, or were under an outside influence, in giving their testimony *which tended to discredit them"* (Rice, P. J.). See also *Henderson v. Jones,* 10 S. & R. 322, 323; *Hester v. Com.,* 85 Pa. 139, 158; *Zell v. Com.,* 94 Pa. 258, 273; *McKee v. Jones,* 6 Pa. 425, 429; *Crooks v. Bunn,* 136 Pa. 368, 20 A. 529.

entirely proper (on the principle of [section] 1129, *ante*) to prove that *at a former time,* when the suggestions of others could not have intervened to create a fancied recognition in the witness' mind, he recognized and declared the present accused to be the person. If, moreover (as sometimes is done) the person has been so placed among others that all probability of suggestion (by seeing him handcuffed, for example) is still further removed, the evidence becomes stronger. The typical illustration is that of the identification of an accused person at the time of arrest:

"1847, Lefroy, B., in *R. v. Burke,* 2 Cox Cr. 295 (the witness could not certainly identify the accused as K., one of the robbers, but said that he had identified a man positively at the police-station, and 'at the time he was sure it was the right man'; witnesses were then allowed to prove that the accused was the same person formerly identified by the witness) : 'I remember a case in England in which that kind of assistance was given; a man had shorn off his whiskers, and evidence was allowed to be given of his being the man whom the witness had identified. I acted in the same way in several cases three years ago at Nenagh, having first consulted with my brother judge upon the subject. It is simply an imperfect identification of the prisoner.'

"This is a simple dictate of common sense, and was never doubted in orthodox practice. That some modern Courts are on record for rejecting such evidence is a telling illustration of the power of a technical rule of thumb to paralyze the judicial nerves of natural reasoning."

We are of opinion that in the circumstances present in this case no reversible error was committed in receiving the evidence.

The judgment is affirmed.