## Commonwealth *v.* Calderbank, Appellant.

Argued September 29, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Thomas D. McBride* and *Edward B. Duffy,* with them *James Herbert Egan,* for appellant.

*Henry Stuckert Miller,* Assistant District Attorney, with him *Frederick B. Smillie,* District Attorney, for appellee.

OPINION BY HIRT, J., November 14, 1947:

In the early morning of March 10, 1947, two men broke into the Philmont Country Club in Montgomery County and stole a quantity of bottled whiskey and other liquors worth about $1,200. Of the two, this defendant alone was identified. He was convicted of statutory burglary and larceny. In this appeal from the sentence imposed, defendant seeks a new trial because

of alleged error in the admission of statements made by an employee of the club on the morning of the crimes, identifying him as one of the offenders. Defendant also contends that there is reversible error in the refusal of the trial judge to withdraw a juror following prejudicial testimony of a police officer implying that defendant had been arrested on prior occasions.

The witness, Karl Schreiber, on whose testimony defendant's conviction must rest, had been a night watchman in the employ of the club continuously for thirteen years, and he was on duty throughout the night of March 10, 1947. The defendant had worked as a bartender in the club for about three weeks in the spring of 1945 and knew where liquor was stored in the basement of the club house. During that period Schreiber saw this defendant every day and shared quarters with him in the "help's house" on the premises. Schreiber testified in substance: That at about 4:00 A. M., on the above date, he was building a coal fire in the kitchen stove of the club when he heard a noise on a porch, enclosed by latticework, outside the kitchen door. When he went out to investigate he was seized by a man who "shouldered" him to a coal bin at one end of the porch. A second man then entered the enclosure through a small door in the latticework near the coal bin. The men were not masked. There was a 125 watt electric light on the porch near the coal bin and another just inside the kitchen door. The lights were both controlled by the same switch which Schreiber had turned on. He testified that the man who seized him said: "No one is going to get hurt" and that he then recognized him both by his voice and "by eyesight", as the defendant. The defendant then went down the stairway at the other end of the kitchen porch to the basement and called to the second man to bring Schreiber down. The defendant broke the lock off the liquor closet near the foot of the stairs in the basement and selected bottles of liquor

which he placed in the hallway. Schreiber was placed in a room immediately across the hallway from the liquor closet. The door was left open and Schreiber again clearly saw the defendant, 10 feet away, in the lighted hallway. Schreiber also testified that he heard the defendant say "I didn't get what I expected" and again recognized his voice. Before the two men left the club house with the liquor, Schreiber suffered a heart attack and lost consciousness. He did not revive until about four hours later. He then called for help and a waitress, who heard him, immediately summoned William Dino, the manager of the club who dressed quickly and rushed downstairs. Schreiber testified that he thought he was dying and that Dino was the first person he saw after regaining consciousness. Dino testified that he asked Schreiber what was wrong and that Schreiber replied: "I know who it was who had committed the robbery" and "Before I pass out altogether I tell you it was Frank". Schreiber had been carried to the lobby of the club and because of his condition a doctor was summoned immediately, as well as the police. Chief Pletcher of the Township police responded and Schreiber, breathing heavily, said to them: "Before I pass out, I want to tell you Frank, that worked for Metz the bartender was down here and robbed the liquor closet". Schreiber did not recall defendant's surname and the full name of the defendant was ascertained from the club's records. Later, when a number of photographs were shown to Schreiber he pointed to one of the defendant as the one whom he had referred to as "Frank".

The above is a review of the testimony, in material respects, on which the commonwealth relied to convict the defendant. The testimony of Schreiber as to his statements to Dino and Pletcher within 40 minutes after he regained consciousness, was received without objection. It was only when Dino and Pletcher testified in corroboration that the defendant objected on the ground that Schreiber's statements as to identity were too re-

mote from the criminal acts to be admissible under the rule of res gestæ. Therefore, in any view, since defendant in the first instance acquiesced in the evidence, even if it were subject to valid objection, a new trial should not be granted on that ground alone. *Com. v. Woloszchuk et al.,* 133 Pa. Superior Ct. 470, 3 A. 2d 10. The testimony, however, regardless of the rule of res gestæ, was admissible under the law applicable to consonant statements. When it was sought to discredit Schreiber's identification of defendant by cross-examination, evidence of Schreiber's prior statements to the same effect, became admissible. The defense of an alibi in the attempt to impeach the commonwealth's testimony, alone, would have worked the same result. But since such testimony is admissible not as proof of the truth of the prior consonant statement, but to rebut any inference that it was a fabrication of recent date (*Com. v. Goetz,* 129 Pa. Superior Ct. 22, 195 A. 144; *Com. v. Joyce,* 159 Pa. Superior Ct. 45, 51, 46 A. 2d 529) it becomes important to determine whether the statements were actually admissible under res gestæ, with the probative weight of spontaneous utterance, as to their truth.

No fixed interval of time after the event can be established as determinative of what is a res gestæ utterance. Much discretion is lodged with the trial judge in each instance as to the admission of such evidence but the circumstances must exclude every inference that the statements were the result of premeditation, design, or even reasoned reflection. *Commonwealth v. Gardner,* 282 Pa. 458, 128 A. 87; *Commonwealth v. Cupps,* 157 Pa. Superior Ct. 341, 43 A. 2d 545. Thus, a declaration by the victim of a homicide made while being taken to a hospital was held to be admissible as res gestæ even though, as here, it was made in response to questioning. *Commonwealth v. Harris,* 351 Pa. 325, 336, 41 A. 2d 688. And statements made by a victim, one-half hour after he had been shot, but as soon as he was able to articulate,

were admissible under the rule. *Commonwealth v. Puntario,* 271 Pa. 501, 115 A. 831. So also, declarations of the victim describing the robbers, one-half hour after his release, were held to be spontaneous and therefore admissible. *Com. v. Goetz,* supra. To the same effect is *Commonwealth v. Stallone,* 281 Pa. 41, 126 A. 56. On the contrary, though the lapsed interval of time was short, statements, normally made, which merely gave an account of a past act were not admitted as res gestæ. *Allen v. Mack,* 345 Pa. 407, 28 A. 2d 783.

Every circumstance in the present case stamps Schreiber's utterances as spontaneous. When he recovered consciousness the emotion and shock which had induced the heart attack, were still in control of his mental faculties. That he then thought he was going to die is a consideration of some significance. Belief in impending death gives somewhat the same quality of credibility to statements made, as to testimony given under oath. There were grounds for Schreiber's belief for his condition was serious, and he was dominated by the impulse to tell the first persons he saw that he had recognized the defendant as one of the thieves. What he said was clearly admissible as res gestæ and the jury were justified, under the circumstances, in giving full weight to this evidence on the controlling issue of identification.

Shortly after the above occurrences, Schreiber was removed to Abington Hospital. On the following day, officer Pletcher arranged for a line-up in Schreiber's presence at the hospital. Defendant was one of the group and Schreiber unhesitatingly identified him there as one of the thieves. The following is a part of Pletcher's testimony together with defendant's objection, and the ruling of the court which defendant contends was reversible error: "Q. Did you take the defendant, Frank Calderbank, away from the hospital that night? A. Yes, I brought him to the hospital and brought him back to Abington police station. Q. On the way back, did Frank say anything about this line-up? A. I asked Frank if

he was satisfied with the line-up. He said he was in many a line-up and he thought it was fair. Mr. Egan: Objected to, and ask for the withdrawal of a juror. That is very unfair. The Court: Yes, that should be disregarded. He said he was satisfied with the line-up." It is contended that the reference to "many a line-up" implied that the defendant had been arrested in the past for other crimes, and that this testimony resulted in prejudicial error entitling him to a new trial regardless of the direction of the trial judge to the jury to disregard it. With this we do not agree.

Reference to the prior record of one on trial on a criminal charge is not prejudicial error entitling a defendant to the withdrawal of a juror in every case. Much depends upon the attending circumstances. In *Commonwealth v. Blose,* 160 Pa. Superior Ct. 165, 50 A. 2d 742, we held that the reference by a witness to a "penitentiary photograph" of defendant was highly prejudicial, entitling the defendant to a new trial. But in *Commonwealth v. Anthony,* 91 Pa. Superior Ct. 518, a commonwealth's witness referred to defendant's "police record". While the eliciting of this testimony was condemned, it was not found to be sufficient in itself to reverse a conviction. So also, a reference to a former raid in *Com. v. Kaminski,* 104 Pa. Superior Ct. 115, 158 A. 639, was held insufficient to require a new trial.

Here, the question of the fairness of the line-up was a proper subject of inquiry and the commonwealth certainly was entitled to prove defendant's admission that the procedure was fair. So also, the testimony of defendant's comment on the certainty with which Schreiber identified him in the line-up undoubtedly was relevant and material. As to that, the police officer, without objection, quoted the defendant as saying "Yes, I know now. I have a headache. He certainly put the finger on me. I now have a headache on my hands". Although defendant's printed brief charges that the commonwealth deliberately elicited the testimony of defendant's admission of having been in prior line-ups, at the argument

it was conceded that the district attorney who examined the witness had no knowledge of prior arrests and did not attempt to elicit testimony of any kind, which was prejudicial to the defendant. The fact that the language of the witness was a quotation from defendant's statement to the police officer, does not in itself remove the charge of prejudicial error, (*Commonwealth v. John Jones*, 355 Pa. 594, 50 A. 2d 342) although a circumstance to be considered in this case. It is of importance that the witness's recital of defendant's admission was given in the natural development of the facts on a material subject of inquiry and was not designedly evoked by the commonwealth to prejudice this defendant by a veiled reference to his arrest on prior occasion. Under all of the circumstances, therefore, he is in no position to complain. *Commonwealth v. Kaminski*, supra; *Commonwealth v. Wojdakowski*, 161 Pa. Superior Ct. 250, 53 A. 2d 851.

Whether the defendant was sufficiently identified was a question for the jury. *Com. v. Tracey*, 130 Pa. Superior Ct. 15, 196 A. 549. There is credible evidence sufficient to sustain the conviction, beyond all reasonable doubt. Schreiber's testimony, identifying the defendant, was impressive and was strengthened by the circumstances which made his former statements, to the same effect, admissible under res gestæ. Defendant did not take the stand because of his prior criminal record. The defense of an alibi was not convincing. A number of witnesses testified that defendant was a guest at a neighboring club throughout the night in question. But their testimony does not preclude the possibility of his unnoted absence for one hour, a period long enough to commit the crime with the aid of an accomplice, and to return to the company of those whose testimony would help him establish an alibi in case of need.

We are unable to find grounds for a new trial in this case.

Judgment of sentence affirmed.