## Commonwealth *v.* Barclay, Appellant.

Argued March 21, 1955. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, and WOODSIDE, JJ. (HIRT and ERVIN, JJ., absent).

*W. J. Woolston,* for appellant.

*Basil C. Clare,* Assistant District Attorney, with him *Raymond R. Start,* District Attorney, and *Joseph E. Pappano,* First Assistant District Attorney, for appellee.

OPINION BY WRIGHT, J., July 21, 1955:

Orville Joseph Barclay was tried in Delaware County on three bills of indictment, Nos. 224, 225, and 226 September Sessions 1953. The offenses charged were, respectively, violation of the Uniform Firearms Act, pointing a deadly weapon, and assault with intent to rob. A demurrer to the evidence was sustained as to bill 224. A verdict of guilty was returned as to bills 225 and 226. Motions for a new trial and in arrest of judgment were refused by the Court below. Sentence was imposed on bill 226, and this appeal followed.

The record discloses that the prosecuting witness, Louis Gray, conducted a check-cashing business in a small booth adjacent to the Pappas restaurant and near the Sun Shipyard in the City of Chester. On June 11, 1953, following his custom on days when he was to cash checks, Gray withdrew $30,000.00 from his bank, and locked the package containing this money in the trunk of his automobile. He parked the car opposite the Pappas restaurant, and went into the restaurant for a soft drink. After leaving the restaurant, Gray walked a short distance down the sidewalk beyond some steps on which appellant was seated, and then started to cross the street. When Gray was partly across the street, appellant approached and, according to Gray, "puts a gun right in my ribs and says 'Get in, get in the God damn car or I will kill you'". Instead of complying, Gray made an outcry

and ran back into the restaurant. Appellant started to follow Gray, but then turned and ran down the street, entered his own car, and drove away. Two witnesses for the Commonwealth heard the commotion, and saw appellant fleeing down the street. They were able to accurately describe appellant, and to obtain the license number of his car. These witnesses also observed that appellant kept his right hand in his pocket, his left hand swinging free at his side. Appellant was apprehended later on the same day. When the police officers examined his car they found in the trunk a loaded revolver wrapped in the jacket appellant had worn at the time of the assault. Gray did not discover that the package of money in the trunk was missing until an hour and twenty minutes after the police had been called. The Commonwealth offered no evidence that appellant took the money.

Appellant first told the police officers that he was not in Chester on the day in question. However, at the trial he admitted that he was at the scene of the crime and that he had made an assault upon Gray. He denied that the assault was made for the purpose of robbery, asserting that Gray had made a derogatory remark and spat at him. Appellant admitted that he had his right hand in his pocket when he was running from the scene, but explained that the sole content of the pocket was coins and keys. On this appeal he raises six questions which we will consider in order.

Conceding that there was evidence of an assault upon Gray, appellant contends that the testimony was insufficient to establish that the assault was with the intent to rob. He cites *Commonwealth v. Kelley*, 162 Pa. Superior Ct. 526, 58 A. 2d 375, to the effect that preparation is not in itself indictable. He also cites *Commonwealth v. Ellis*, 349 Pa. 402, 37 A. 2d 504, for the proposition that, to infer intent from actions, the

actions must bear a reasonable relation to the commission of the crime. In the Kelley case we held that the evidence did not establish an attempt to commit larceny by trick. In the Ellis case the Supreme Court held that there was insufficient evidence of entry with intent to commit a felony. Each decision was based upon the conclusion that there was no overt act by the defendant. We do not consider these cases controlling in the present factual situation. Gray was well known as a check casher. The assault occurred near the place in which Gray carried on his business. It was committed on a day when Gray was known to carry a large sum of money. Thrusting a gun in Gray's ribs, appellant instructed Gray to get in his car or be killed. Considering the evidence in its entirety, it was proper for the lower Court to permit the jury to draw the reasonable inference that appellant intended to rob Gray. See *Commonwealth v. Eagan*, 190 Pa. 10, 42 A. 374.

Appellant next contends that it was reversible error for the prosecuting attorney, in questioning the witnesses, to repeatedly employ the words "robbery" and "hold-up". Our review of the record does not indicate that the use of these terms was prejudicial. *Commonwealth v. Capalla*, 322 Pa. 200, 185 A. 203, cited by appellant, is not controlling, as will appear from a comparison of the statements made by the district attorney in his closing address in that case. Language of a prosecuting officer which will justify a reversal must be such that its unavoidable effect would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant, so that they could not fairly weigh the evidence and render a true verdict: *Commonwealth v. Drischler*, 175 Pa. Superior Ct. 74, 103 A. 2d 467. As pointed out by Judge TOAL, the use of the words in question could not, under the

circumstances, "have been over-persuasive to such a degree that the jury would blindly render a guilty verdict only because the Commonwealth's officer characterized the crime as 'holdup' and 'robbery' ".

Appellant next contends that it was error not to withdraw a juror when the prosecuting attorney in his summation to the jury inquired: "Can you believe this defendant who has the propensity to steal and murder?" The record discloses that, after appellant had taken the stand in his own defense, the records of his prior convictions for larceny and murder were introduced by the Commonwealth in rebuttal for the purpose of attacking appellant's credibility. While the remark might have been couched in more appropriate language, it was directed to the credence which the jury might give to appellant's testimony. The trial Judge gave full instructions on this subject. We are not persuaded that appellant was prejudiced.

Appellant next contends that it was error to admit his prior criminal record. He first alleges that, in his direct examination, he did not contradict any of the evidence of the Commonwealth. His position is that the "issue of credibility can only arise from the direct evidence". Not only is there no merit in this position, but also our reading of the record does not disclose a factual basis for it. He alleges secondly "that the issue of credibility does not itself make admissible a prior record". His position in this connection that it is improper in any case to permit the introduction of the record of prior convictions for the purpose of attacking credibility is contrary to the settled law of this Commonwealth. In the case of *Commonwealth v. Gibbs,* 167 Pa. Superior Ct. 79, 74 A. 2d 750, President Judge Rhodes clearly stated the applicable rule as follows: "Records of previous convictions of all felonies, and misdemeanors in the nature of crimen

falsi, are admissible in evidence for the purpose of impeaching the credibility of a defendant in a criminal case who testifies in his own behalf".

Appellant's next contention is that it was error, in introducing the prior convictions, to read into the record the sentences imposed. The rule of law relating to the introduction of records of prior convictions has already been stated. It would seem that the sentence is properly a part of the record. Thus, in *Commonwealth v. Minnich,* 250 Pa. 363, 95 A. 565, Mr. Justice STEWART said: "The clear implication here is that the record of conviction to show guilt must recite judgment or sentence". In any event, appellant is not in position to complain since the record discloses that his counsel requested that the disposition of the prior cases be explained.

Appellant's final contention is that it was error to admit testimony concerning the revolver found some eight hours after the assault. He argues that the revolver found in the trunk of his car was dark in color, whereas Gray testified that the weapon appellant used was "white metal chrome". The record discloses that one of the police officers, Detective Ryan, questioned Gray immediately after the crime and then began to search for a "black" revolver. Howbeit, it was not error to permit the introduction into evidence of the revolver found in appellant's car. Its connection with the crime was for the jury. See *Commonwealth v. Goetz,* 129 Pa. Superior Ct. 22, 195 A. 144, and *Commonwealth v. Karamarkovic,* 218 Pa. 405, 67 A. 650. In the latter case, Mr. Chief Justice MITCHELL aptly remarked: "Counsel seem to be slow in learning that the multiplication of assignments of error upon trivial points, having no substantial bearing on the merits of the issue, are always injurious to an appellant's case by their inevitable suggestion that the record has been hunted

over less to discover real error or injustice than to pick a flaw on which to hang an objection".

Judgment affirmed.

ERVIN, J., took no part in the consideration or decision of this case.