Commonwealth *v.* Stokes, Appellant.

Argued October 1, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, O'BRIEN and KEIM, JJ.

*Thomas A. Harper,* with him *Utterback & Brown,* for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Harry Savage,* Assistant District Attorney, and *Edward C. Boyle,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 26, 1962:

Appellant was convicted of first degree murder and sentenced to life imprisonment.

On December 10, 1959, at around 7:00 p.m., two police officers of the Borough of Braddock, Krehely and Reaves, while patrolling in the vicinity of the Baltimore and Ohio Railroad tracks on Braddock Avenue, received a call to proceed to 226 Halket Avenue—100 yards from the B. & O. Railroad tracks. They testified that when they arrived at that address two minutes later, they found a Mrs. Barbara Martin, aged 76, who had been "brutally beaten". She had two black eyes, a swollen chin, severe lacerations and bumps all over her face, she was bleeding about her face, nose and one arm, and *she was in a hysterical condition.* She told them she thought her arm and shoulder were broken.

Mrs. Martin, in reply to a question from one of the officers, said that *not more than five minutes earlier*

she had been grabbed by "a young black man"* near the watchman's shanty at the 11th Street crossing over the B. & O. tracks, that she had been dragged to the right of the shanty, struck by her assailant, and as a result had fallen on the "fast" track. The assailant then took her handbag (containing $2 and a fifth of whiskey) from her. She had been returning home from a visit to a drug store at 11th Street and Braddock Avenue, a distance of about 500 yards from the tracks and after the assault had dragged herself to Mrs. Kotvas' home at 226 Halket Avenue, which was the nearest dwelling house.

Mrs. Josephine Kotvas, who was 87 years old, was present when Mrs. Martin's statements were made. However, at the time of the trial she was in a hospital suffering from a stroke and advanced senility, and her doctor stated her condition was such that she could not testify.

Mrs. Martin was taken immediately to a hospital where she died ten days later. An autopsy was performed by a pathologist who testified that death resulted from a "subdural and subarachnoid intercranial hemorrhage and cerebral necrosis following contusions of the face and body." According to the pathologist, the hemorrhages were the result of the application of severe and extensive force and that they could not have been caused by a fall "unless she would fall from a high place and meeting obstructions on the way down, . . . because the bruises were too widely distributed."

Approximately a year and three months after this crime, defendant was arrested in connection with another crime of which he was suspected. On March 20, 1961, he was interrogated for several hours at the Allegheny County Detective Bureau. At first he denied

---

* Mrs. Martin spoke in English except for the four words which she mentioned in Slovakian language—which was spoken by Officer Krehely—possibly because officer Reaves is a colored man.

any connection with the assault of Mrs. Martin, but after several hours made orally and thereafter signed a full confession. In this confession he denied striking Mrs. Martin but admitted "bumping" her "pretty hard", and said that as a result she fell on her face, and that he then took her pocketbook and whiskey. After stating these facts orally, defendant informed his interrogators that he could read and write "only a little bit," and consequently he wanted the statement read to him when it was written. When the statement was transcribed, it was read to defendant by James B. De-Stout, Chief of Allegheny County Detectives, in the presence of several other detectives, a reporter and a radio commentator. Defendant requested that the written statement be changed in respect to the bottle of whiskey, and after this had been corrected, he signed the written statement. All the witnesses to defendant's oral and written statements testified that when he made them he appeared to be normal and had even requested the correction in the written statement above mentioned.

The day after the aforesaid statement or confession, defendant was taken to the area where the assault had allegedly occurred. There, according to the Commonwealth's evidence, defendant voluntarily described his movements, pointed out the location of the assault and where the pocketbook and bottle had been thrown. Photographs taken in connection with this "walk-through" were admitted as exhibits.

Defendant testified at the trial that he had not attacked Mrs. Martin; that he did not understand the written statement although it was read to him; and that after signing it he had informed the detectives that he should not have done so. He recalled the "walk-through", but denied knowing where Mrs. Martin had been attacked. He also testified that the photographs were taken after he had been told to point to

particular locations. Defendant produced testimony that when tested at school several years previous to his trial, he had an I.Q. of 46 and a mental age of approximately 6½ years.

Defendant raises several important questions. The first is that the statement taken by the officers from Mrs. Martin was inadmissible. The Court had admitted it as part of the res gestae. Defendant contends that Mrs. Martin's oral statement was not spontaneous, but on the contrary consisted of a narrative which was the result of reflection and premeditation or design; that it was made at least five minutes after the attack and at a place 100 yards from the place of the crime; and that she had the presence of mind and normality of condition to describe her assailant in the Slovakian language (out of apparent deference to Officer Reaves). There is no merit in this contention.

In *Commonwealth v. Noble,* 371 Pa. 138, 88 A. 2d 760, the Court said (pp. 144-145) : "It may be well to review some of these decisions. ' "The res gestae rule is an exception to the hearsay rule . . . ." Res gestae declarations "ought to be confined to those utterances, made in connection with a startling event by one laboring under the stress of nervous excitement caused by it": Com. v. Gardner, 282 Pa. 458, 465, 128 A. 87, 90': Athas v. Fort Pitt Brewing Co., 324 Pa. 313, 318, 188 A. 113. . . .

"Spontaneous exclamations or declarations uttered during or immediately preceding or following the actual infliction of wounds or springing out of the actual commission of the crime, are admissible as within the res gestae rule: Commonwealth v. Rumage, 359 Pa. 483, 486, 59 A. 2d 65; Commonwealth v. Gardner, 282 Pa. 458, 128 A. 87. Moreover, such declarations are not objectionable because made in response to questions: Commonwealth v. Rumage, 359 Pa., supra; Commonwealth v. Harris, 351 Pa. 325, 41 A. 2d 688; and the

exclamations or declarations of mere bystanders are admissible: Coll v. Easton Transit Co., 180 Pa. 618, 37 A. 89; Commonwealth v. Fugmann, 330 Pa. 4, 198 A. 99.

"No definite time-limit or distance from the crime or event in issue can be fixed by the Courts to determine what spontaneous utterances are admissible; each case must depend on its own facts and circumstances: Commonwealth v. Gardner, 282 Pa., supra; Commonwealth v. Stallone, 281 Pa. 41, 126 A. 56." Accord: *Campbell v. Gladden,* 383 Pa. 144, 118 A. 2d 133; *Commonwealth v. Rumage,* 359 Pa. 483, 59 A. 2d 65; *Commonwealth v. Stallone,* 281 Pa. 41, 45, 126 A. 56 (15-30 minutes); *Commonwealth v. Werntz,* 161 Pa. 591, 596, 29 A. 272; *Commonwealth v. Calderbank,* 161 Pa. Superior Ct. 492, 55 A. 2d 422 (4 hours later); *Commonwealth v. Goetz,* 129 Pa. Superior Ct. 22, 195 A. 144 (30 minutes); Cf. also *Commonwealth v. Harris,* 351 Pa. 325, 336, 41 A. 2d 688, and many cases therein cited.

Decedent's statement to the police officers made five minutes after the assault and robbery when she was in a hysterical condition as a result of the terrible beating, was undoubtedly spontaneous and not the result of reflection and premeditation or design, and hence was admissible under the res gestae rule.

The second ground of defendant's appeal is that his confession was inadmissible because at the time it was offered the Commonwealth had not yet proved the corpus delicti. The law is well settled that a confession is inadmissible until the corpus delicti has been prima facie proved: *Commonwealth v. Ross,* 403 Pa. 358, 169 A. 2d 780; *Commonwealth v. Turza,* 340 Pa. 128, 16 A. 2d 401.

In *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861, the Court, quoting from *Commonwealth v. Homeyer,* 373 Pa. 150, said (page 209): "'. . . The

Commonwealth in such a case, in order to establish the corpus delicti, must prove (1) that the alleged victim is dead, and (2) that the death occurred as a result of a felonious act. The corpus delicti, like other facts, may be shown by circumstantial evidence; it is sufficient if these circumstances are consistent with crime even though they are also consistent with suicide or accident; if it were otherwise it would be impossible in many cases, where there were no eye witnesses, to convict a criminal. [Citing cases.]' [Accord: *Commonwealth v. Ross*, 403 Pa., supra; *Commonwealth v. Homeyer*, 373 Pa., supra.]

. . .

(Pages 201-203) "The test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial—is whether accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged, i.e., the murder of Max Kravitz: [Citing cases].

". . . 'It has become customary for a defendant in his argument before an Appellate Court to base his claims and contentions upon his own testimony or that of his witnesses even after a jury has found him guilty. This, of course, is basic error. After a plea or verdict of guilty, "we accept as true all of the Commonwealth's evidence upon which, if believed, the jury could have properly based its verdict: [Citing cases]." '

(Page 208) " '. . . ". . . Proof by eye witnesses or direct evidence of the corpus delicti or of identity or of the commission by the defendant of the crime charged is not necessary. '. . . It is clearly settled that a man may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reasonable doubt: [Citing cases.]' " '

(Page 209) " 'The Commonwealth has the burden of proving beyond a reasonable doubt a wilful, deliberate and premeditated killing in order to constitute murder in the first degree. . . .'

(Page 210) ". . . 'It sometimes happens the circumstances attending the act may be consistent with crime, suicide or accident. In such cases, . . . it is not necessary to show by affirmative proof that the latter two possibilities do not exist before evidence as to who did the act is admitted: Com. v. Puglise, [276 Pa. 235, 238, 120 A. 401].' "

(Page 212) "While defendant . . . concedes that the law is that which is hereinbefore set forth, she nevertheless contends in effect that there must be proof by eyewitnesses that she committed the crime charged, or, as she sometimes expresses it, that the Commonwealth has to exclude the possibility that some third party committed this murder. Careful consideration, analysis and all the hereinabove quoted and cited decisions of this Court demonstrate that this is not the law."

The trial Judge instructed the jury that if the Commonwealth proved beyond a reasonable doubt that the killing was committed either in or as a result of the perpetration of a robbery, or was a wilful, deliberate and premeditated killing, they could find defendant guilty of murder in the first degree. No complaint is made by defendant or could successfully be made to the Judge's charge. The Penal Code, Act of June 24, 1939, P. L. 872, §701, as amended, 18 P.S. §4701; *Commonwealth v. Hart*, 403 Pa. 652, 170 A. 2d 850; *Commonwealth v. Ladd*, 402 Pa. 164, 166 A. 2d 501; *Commonwealth v. Kravitz*, 400 Pa., supra; *Commonwealth v. Rumage*, 359 Pa. 483, 59 A. 2d 65; *Commonwealth v. Williams*, 304 Pa. 299, 156 A. 86; *Commonwealth v. Doris*, 287 Pa. 547, 135 A. 313; *Commonwealth v. Danz*, 211 Pa. 507, 60 A. 1070; *Commonwealth v. Eisenhower*, 181 Pa. 470, 37 A. 521.

The evidence above recited demonstrates that the corpus delicti was proved before defendant's confession was admitted in evidence. The aforesaid authorities likewise clearly and unequivocally dispose of all the defendant's contentions. Furthermore, the evidence was amply sufficient to prove defendant guilty of murder in the first degree.

Judgment affirmed.

Mr. Justice COHEN dissents.