91 N.J. Super. 470 (1966)
221 A.2d 47
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT DAVIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1966.
Decided June 17, 1966.
*471 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Donald R. Conway argued the cause for appellant (Messrs. Lucchi & Conway, attorneys; Mr. Benedict E. Lucchi, of counsel).
Mr. Harold N. Springstead argued the cause for respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
Trial of defendant for armed robbery, in violation of N.J.S. 2A:141-1 and N.J.S. 2A:151-5, and for rape, N.J.S. 2A:138-1, resulted in a conviction by the jury as to the armed robbery charge and an acquittal on the indictment for rape. He was sentenced to State Prison for a term of three to five years for the robbery and to a consecutive term of two to three years for being armed.
In his appeal from the judgment of conviction defendant contends that the trial court erred (1) in permitting a composite representation of a head made by a police officer, Donald *472 Campbell, from a description of the robber furnished by one of the victims, to be received in evidence over his objection, and (2) in admitting the composite when Officer Campbell had not been qualified as a competent technician. No other claims of error are asserted.

I.
The composite was prepared from information furnished the police by Mrs. Laura Alexander, an eye-witness to the crimes. The crimes had been committed by two men and a woman at the Alexander home, and the police, having been summoned as soon as the perpetrators had left and the victims were untied, arrived and gathered information descriptive of the intruders. Officer Campbell testified:
"I went down to the kitchen with Mrs. Alexander and she gave me a full description of the people and I made composites  a sketch."
The officer further stated:
"I put them together and went back to headquarters and put out a teletype alarm."
With respect to the person in the composite in issue, the police alarm broadcast by Officer Campbell described him as follows:
"One colored male age thirty-five to forty, six-foot, 175 pounds, thin, small frame, wore dark overcoat, hat, dark hat, shoes and pants, white shirt and tie * * *."
Following this, the suspect was described in the police alarm by a series of code numbers used by the police to compile a composite picture from a standard identification kit in common use by police departments, manufactured by the Townsend Company in California. The final note of description in the alarm referred to this person as having "Dark brown complexion."
As to the manner in which the composite is prepared, Officer Campbell testified:
*473 "You have a chart. I show the chart to a person. Does this look like the lip this person has? If he says yes, fine. I take it out."
And further:
"There are 53 chin lines in this box. They go from C-1 to C-53. This particular chin line, the woman told me the man was thin faced, so I picked out a thin foil, that is a thin chin line foil."
Officer Campbell explained that the chart and kit have approximately 100 categories of eyes, about 50 kinds of lips, various types of noses, eyebrows, hairlines, hats, and the like. The composite consists in the putting together of the various foils selected upon the basis of the information supplied.
Mrs. Alexander positively identified defendant at the trial as one of the perpetrators of the robbery and further testified, without objection, that she had previously identified defendant at police headquarters. Such testimony of prior identification is not challenged in this appeal. And properly so. No valid claim could now be made that such evidence of prior identification, to which no objection was made, constituted plain error. State v. Williams, 39 N.J. 471, 487-489 (1963), certiorari denied 374 U.S. 855, 83 S.Ct. 1924, 10 L.Ed.2d 1075 (1963). That identification at trial and her testimony of prior identification at police headquarters were the strong links in the chain of evidence which probably induced the jury to reject the defense of alibi and to return the verdict that defendant was guilty of the robbery. The acquittal as to the rape may well have been motivated by other considerations, not pertinent here, beyond the identification.
There was no showing in the record that the composite was so strikingly similar to defendant that its use might have adversely affected defendant. In lieu of any personal view by us of defendant, we requested the prosecutor to forward to us front and side view pictures of defendant taken at the time in issue so that we might compare them with the composite picture in the appendix. This was done. Pictures of defendant taken at the Bergen County Sheriff's office on November 25, 1964, four days after the crimes had been committed, *474 when compared with the composite picture, lead us to conclude that the use of the composite was more likely in defendant's favor rather than prejudicial to him. There is no striking resemblance between the composite picture and the police picture taken a few days after the robbery. We are satisfied that the composite was of no material value in assisting the State to prove defendant's guilt and that if there were any error in admitting the composite into evidence it was harmless at most. Harmless error furnishes no adequate basis for a reversal. State v. Murphy, 85 N.J. Super. 391, 398 (App. Div. 1964).
Defendant does not claim that there was any error in the police officer's testifying to the verbal description of the intruders as related to him by Mrs. Alexander. Such spontaneous declarations made by an eyewitness to a crime within a short period of time after a crime has been committed, when the witness' recollection is fresh and there is no evidence of motivation or opportunity for fabrication, are generally admissible under the res gestae exception to the hearsay evidence rule. State v. Stephan, 118 N.J.L. 592, 600-602 (E. & A. 1937); Commonwealth v. Goetz, 129 Pa. Super. 22, 195 A. 144 (Super Ct. 1937); Beeland v. State, 149 Tex. Cr. R. 272, 193 S.W.2d 687 (Ct. Crim. App. 1946).
The issue relates rather to the utility of the composite as a physical translation of the verbal description, prepared from a kit containing a limited, albeit substantial number of eyes, noses, lips, hairlines, chin lines, hats, etc. Thus far, our courts have apparently not decided the precise issue in any reported case, so far as we are aware.
However, the courts in our neighboring states have passed upon the question in connection with the admissibility of analogous composite pictures prepared by police artists from descriptions furnished by eyewitnesses. People v. Coffey, 11 N.Y.2d 142, 227 N.Y.S.2d 412, 182 N.E.2d 92 (Ct. App. 1962); People v. Jennings, 23 A.D.2d 621, 257 N.Y.S.2d 456 (App. Div. 1965); Commonwealth v. Goetz, supra; Commonwealth v. Rothlisberger, 197 Pa. Super. 451, 178 A.2d 853 (Super. Ct. 1962).
*475 The New York courts exclude the composite picture except where the credibility of the witness is under "violent attack" or where there is a claim that the testimony at trial is a "recent fabrication." That is the same rule which governs admissibility of a prior identification by the witness. In Coffey the composite sketch by the police artist was held properly admissible as coming within the exception of testimony of a witness "assailed as a recent fabrication." In Jennings admission of the composite picture was held to be reversible error because it was offered for the avowed purpose of identifying defendant and supporting the credibility of the sole witness, and not for either of the exceptional reasons covered by the exclusory rule.
In Goetz, the Pennsylvania court held the police drawing was similar to the verbal description, which would have been admissible as a spontaneous declaration. Hence, the drawing itself was admissible on the same theory as the verbal description. By contrast, in Rothlisberger supra, the same court held that a pen and ink sketch made by a police artist from a description by the prosecutrix in a rape and robbery case furnished some four days after the crimes was improperly admitted into evidence because the sektch was not the result of a spontaneous utterance as in Goetz, and there had been no substantial impeachment of the witness.
In the instant case Mrs. Alexander's statement to the police would qualify as a "spontaneous declaration," for the special purpose of this type of case, because it was made at the scene of the crimes, shortly after their occurrence, upon arrival of the police who were summoned by Mr. and Mrs. Alexander as soon as they freed themselves after the intruders left. Moreover, cross-examination of Mrs. Alexander had resulted in a strenuous attack upon her credibility so as to entitle the State to rehabilitate her by a showing of a prior identification consistent with that at the trial. The composite was but a physical representation of the verbal description. Its artificial limited character was obvious to the jury charged as it was with the duty to weigh its value as evidence. Our courts have *476 leaned favorably toward the admissibility of prior extra-judicial identification of a defendant, when the prior identification was made under circumstances "precluding unfairness or unreliability." State v. Williams, supra, 39 N.J., at p. 489.
The record is vague as to whether Mrs. Alexander identified the composite as being consonant with her verbal description. Officer Campbell's testimony implies that she did because he explained that he selected foils from the kit as she described the various features and he assembled them into the composite in her presence. It would have been better if the composite introduced into evidence had been identified by her at the trial as being an accurate reproduction of that prepared in her presence on the basis of the descriptive information furnished by her at the scene of the crime. However, as noted above, we find that there was no prejudicial error in the admission of the composite because of its lack of any striking resemblance to defendant and its practically worthless probative value as part of the State's case.

II.
We find no substantial merit in defendant's second contention that Officer Campbell was not properly qualified to testify with reference to the composite. The officer testified that he had taken a 40-hour course over a one-week period at the Bergen County Police Academy, given by the manufacturer of the identification kit; that the kit had been in police use in Teaneck for approximately five years, and that he had compiled composites in approximately 50 investigations. The officer had never testified in any previous case with reference to composites. However, in this case Officer Campbell explained how the composite was made from the kit and showed familiarity with its use by reassembling it in court from the data in the police alarm.
Finding no prejudicial error in any of the grounds urged for reversal, the judgment of conviction is affirmed.