## Commonwealth v. Edwards, Appellant.

Argued April 30, 1968.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Bernard L. Segal,* with him *Needleman, Needleman, Segal & Tabb,* for appellant.

*Michael M. Baylson,* Assistant District Attorney, with him *Michael J. Rotko,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, August 6, 1968:

This is an appeal from the judgment of sentence of five to twelve years imposed on appellant following conviction by a jury of second degree murder and denial of post-trial motions.

At approximately 8:15 p.m. on January 7, 1965, at 52nd and Girard Avenue, in Philadelphia, a scuffle occurred among three people. David Nutter was shot in the buttocks and fell to the ground in the middle of the intersection. An eyewitness bystander, Charles J. Wilson, identified appellant as one of the persons who attacked David Nutter, and also saw appellant pistol-whip David Nutter as he was lying in the street. Wilson heard David Nutter say "Howard, I'm going to get you," as appellant stood over Nutter with a pistol. A Philadelphia police officer, Michael Pisa-

nelli, approached the intersection in response to alarmed citizens' cries. He observed two persons running south on 52nd St., and briefly but unsuccessfully gave chase. Officer Pisanelli returned to the intersection and observed David Nutter, bleeding profusely, lying in the street. His brother, Edward Nutter, also came over. Edward heard his stricken brother say, while lying on the street, "Howard from downtown shot me," or "Howard from downtown got me." Asked who "Howard" was the deceased said, "Ronald Camp and LeVay would know him." Camp and LeVay were police officers. Camp testified at trial that appellant and deceased exchanged hostile words about one hour before the shooting.

Edward drove his soon-to-be-dead brother to Misericordia Hospital. Shortly after 9:00 p.m. another Philadelphia Police officer, Herbert Quarterman, had a conversation with David Nutter in which Nutter stated seven or eight times, "Howard shot me . . . Camp knows him."

Officer Quarterman testified as to David Nutter's condition at the hospital: ". . . prone on his back. His eyes were closed. He was breathing quite heavily. He screamed several times and he had blood at his hair line and forehead. He had a protrusion of the skin below his navel as though he had a double navel. Blood was coming from both sides of him on the litter." At 9:30 p.m., David Nutter was pronounced dead of a gunshot wound.

Appellant claims that the court below erred in several respects in admitting in evidence certain statements of the decedent under exceptions to the hearsay rule, and in charging the jury.

The court admitted the deceased's statement heard by Wilson under the res gestae (spontaneous declaration) exception to the hearsay rule. It did likewise for the statement to the brother, Edward Nutter, and

the statement to Officer Quarterman at the hospital. Moreover, the statement at the hospital was also admitted under the exception for dying declarations. Appellant contends that none of these statements should have been admitted.

It was perfectly proper for the trial court to admit the disputed statements into evidence. This aspect of this case is controlled by the recent case of *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A. 2d 291 (1966). We quote at length from Justice EAGEN'S opinion in that case at page 70: "The rule permitting res gestae declarations to be introduced in evidence is an exception to the hearsay rule. The principle is based upon the rationale that a spontaneous declaration of an individual who has recently suffered an overpowering emotional and shocking experience is likely to be truthful. See, I Henry, Penna. Evidence, §466 (1953). Such evidence is limited to declarations supporting the conclusion that the statements were spontaneous utterances of thought created by, or emanating from, the litigated act, and so near in time thereto as to exclude the possibility that they were the product of premeditation or design. See, Commonwealth v. Noble, 371 Pa. 138, 88 A. 2d 760 (1952); Commonwealth v. Rumage, 359 Pa. 483, 59 A. 2d 65 (1948); and, Commonwealth v. Cupps, 157 Pa. Superior Ct. 341, 43 A. 2d 545 (1945). No definite time limit, or distance from the site of the crime, has been fixed by the courts in determining what spontaneous utterances are admissible as part of the res gestae. Each case has been judged on its own facts and circumstances: Commonwealth v. Stokes, 409 Pa. 268, 186 A. 2d 5 (1962), and cases cited therein. The length of time which has elapsed between when the declarations were uttered and when the occurrence took place is only one element to be considered in determining their spontaneity. See Commonwealth v. Noble, supra, and Commonwealth

v. Harris, 351 Pa. 325, 41 A. 2d 688 (1945)." In *Cheeks,* the statements were made by the victim some forty-five minutes to an hour after the attack. The victim, although he later died, was not at the time he made the statements in nearly so serious a condition as was David Nutter here. The instant case is the *a fortiori* case to *Cheeks.* The evidence convincingly shows that David Nutter's declarations were spontaneous utterances emanating from the attack, and excludes the possibility that the declarations were the product of premeditation or design. The fact that some of the statements were in response to questions does not preclude their being spontaneous. *Commonwealth v. Harris,* 351 Pa. 325, 41 A. 2d 688 (1945); *Commonwealth v. Stokes,* 409 Pa. 268, 186 A. 2d 5 (1962). *Commonwealth v. Brown,* 264 Pa. 85, 107 Atl. 676 (1919), relied on by appellant, was overruled *sub silentio* by *Harris.*

In addition to being spontaneous, a declaration in order to qualify under the res gestae exception must be "made in reference to some phase of [the] occurrence which [the declarant] perceived." *Carney v. Pennsylvania R. R. Co.,* 428 Pa. 489, 493, 240 A. 2d 71 (1968), citing *Allen v. Mack,* 345 Pa. 407, 410, 28 A. 2d 783 (1942). Appellant seeks to bring his case within the shelter of *Commonwealth v. Fugmann,* 330 Pa. 4, 198 Atl. 99 (1938). In that case, this Court held inadmissible the declaration of the victim of a bomb sent through the mails, even though the statement met the necessary criteria of spontaneity. We held that the statement "Fugmann done it" was inadmissible because based purely on conjecture rather than knowledge. Statements as to the perpetrator made after someone stood over the victim and pistol whipped him are hardly based on conjecture. The mere fact that the victim was shot in the buttocks by no means indicates that he did not see his assailants, and the

other evidence clearly indicates that Nutter did in fact see appellant.

Nor does the statement "Howard, I'm going to get you" fail to elucidate the event in question. The logical interpretation of such a statement is that the deceased was describing his assailant.

We also agree with the court below that the statement in the hospital qualified as a dying declaration as well as a spontaneous declaration.[1] Appellant's contention that the evidence does not establish that Nutter knew he was dying is not well taken. "It is well-settled that the sense of impending death which the dying person must have had in order to render a dying declaration made by him admissible in evidence may be inferred from the nature of the wound or the state of his illness without any express declaration to show that he was sensible of impending death." *Commonwealth v. Plubell*, 367 Pa. 452, 457, 80 A. 2d 825 (1951) and cases cited therein; see also *Commonwealth v. Brown*, 388 Pa. 613, 131 A. 2d 367 (1957) and *Commonwealth v. Knable*, 369 Pa. 171, 85 A. 2d 114 (1952). In the instant case, the serious wound, the amount of bleeding, and decedent's own statements (particularly, "Don't let them let me die") establish the necessary sense of impending death.

Appellant argues further, that even if the statements were properly admitted, the court below committed reversible error in failing to instruct the jury adequately. Appellant urges that the court should

---

[1] Of course, the statement's admissibility under the res gestae exception suffices: "When an unsworn statement is made as part of the res gestae, properly so called, or under such other circumstances as to make it a spontaneous one, this in itself is sufficient ground of admissibility and it need not be further shown that the assertion is also a dying declaration because made under a fixed sense of impending dissolution." *Commonwealth v. Puntario*, 271 Pa. 501, 506, 115 Atl. 831 (1922).

have instructed the jury on how to determine whether the statements were in fact res gestae or dying declarations. Appellant relies on this point on a series of cases pertaining to dying declarations, but we agree with him that the same principles would apply to res gestae statements. In the cases relied upon by appellant, the following passage appears: "Whether the attendant facts and circumstances of the case warrant the admission of a statement as a dying declaration is in the first instance for the court, but, when admitted, the declarant's state of mind and the credibility, interpretation and weight to be given his statement are for the jury *under proper instructions*." (Emphasis added). *Commonwealth v. Brown,* supra, at page 616; *Commonwealth v. Knable,* supra, at page 175; and cases cited therein. The question is what are proper instructions. In our opinion, a general charge on credibility of witnesses and weight of evidence is what this Court meant by "proper instructions." It would run counter to the basic tenet of the common law—that questions of law are for the court, and questions of fact for the jury—to hold otherwise. Appellant would have the court instruct the jury that in order for a statement to be acceptable as a dying declaration, the declarant must have knowledge of impending death. Although he does not spell it out so clearly, he obviously would apply the same principle to res gestae statements and require the jury to find that they were spontaneous utterances emanating from the event and so near in time as to exclude the possibility of premeditation or design. Clearly, if we were to follow appellant's suggestion, we would allow the jury to become usurpers of the judge's function to decide the law. That such a result was not intended by this Court is evident from the citation in *Knable,* supra, of Wigmore on Evidence, 3d Ed., Vol. 5, §1451(b). That subsection states: "After a dying declaration, or any other

evidence, has been admitted, the *weight* to be given to it is a matter exclusively for the jury. They may believe it or may not believe it; but, so far as they do or do not, their judgment is not controlled by rules of law. Therefore, though they themselves do not suppose the declarant to have been conscious of death, they may still believe the statement; conversely, though they do suppose him to have been thus conscious, they may still not believe the statement to be true. In other words, their canons of ultimate belief are not necessarily the same as the preliminary legal conditions of Admissibility, whose purpose is an entirely different one (*ante,* §29).

"It is therefore erroneous for the judge, after once admitting the declaration, to instruct the jury that they *must* reject the declaration, or exclude it from consideration, if the legal requirement as to consciousness of death does not in their opinion exist. No doubt they *may* reject it, on this ground or on any other; [footnote omitted] but they are not to be expected to follow a definition of law intended only for the judge. . . ." (Emphasis in original) We thus hold that the trial judge did not err in failing to instruct the jury on conditions of admissibility of dying declarations and res gestae statements.

Finally, we hold that the court below properly refused to charge on involuntary manslaughter where there was no indictment therefor. *Commonwealth v. Hardy,* 347 Pa. 551, 554, 32 A. 2d 767 (1943).

Judgment affirmed.

Mr. Justice MUSMANNO took no part in the consideration or decision of this case.